UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TINA CARR and YVETTE COLON,<br><br>                  Plaintiffs,<br><br>        v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the U.S. Department of Education; NAVIENT CORPORATION; NAVIENT SOLUTIONS LLC; NAVIENT CREDIT FINANCE CORPORATION; SALLIE MAE BANK; EDUCATIONAL CREDIT MANAGEMENT CORPORATION; JOHN DOE TRUST #1, f/k/a "Sallie Mae Education Trust"; JOHN DOE TRUST #2, a/k/a "Navient Federal Loan Trust"; JOHN DOE TRUST #3, a/k/a "Deutsche Bank ELT SLM Trusts"; JOHN DOE TRUST #4, a/k/a "Bank of New York ELT SLMA Trusts"; and JOHN DOE INC. a/k/a "Navient,"<br><br>                  Defendants. | No. 17 Civ. 8790 (KPF) (KNF) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEVOS'S MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
*Counsel for Defendants*
86 Chambers Street, 3rd Floor
New York, New York  10007
Telephone:  (212) 637-2793
Facsimile:  (212) 637-2717

*Of Counsel:*
MICHAEL J. BYARS
Assistant United States Attorney

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ...........................................................................................................2

A. The Loans at Issue..................................................................................................2

B. The Borrower Defenses...........................................................................................3

    1. The Borrower Defense Provisions for Direct Loans.........................................3

    2. The Borrower Defense Provisions for FFELs .................................................4

C. The Explosion in Borrower Defense Applications Beginning in 2015....................6

D. The Amended Complaint ........................................................................................7

LEGAL STANDARDS .................................................................................................8

A. Rule 12(b)(1)..........................................................................................................8

B. Rule 12(b)(6)..........................................................................................................8

ARGUMENT ................................................................................................................9

I.  The Court Lacks Subject Matter Jurisdiction Because the United States Has Not
    Waived Its Sovereign Immunity for Claims Seeking Injunctive Relief ...................9

    A. Plaintiffs' Claims Are Injunctive in Nature Because They Seek Prospective Relief .......12

    B. Plaintiffs' Claims Are Injunctive in Nature Because They Do Not Target a Discrete
       Avenue for Collection but Instead Would Effectively Constitute a Complete Bar...........13

II. Plaintiffs Fail to State a Claim................................................................................16

    A. Carr's Direct Loan Borrower Defense Is a Defense to Collection ....................17

    B. Colon's FFEL Borrower Defense May Be Asserted Only Against the Holder of Her
       Loans................................................................................................................18

III. Plaintiffs Have Not Exhausted Their Administrative Remedies .............................19

CONCLUSION............................................................................................................21

**TABLE OF AUTHORITIES**

Cases                                                                                                      Page

*Am. Ass'n of Cosmetology Sch. v. Riley*,
  170 F.3d 1250 (9th Cir. 1999) ....................................................................10, 11, 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................9

*Bank of America NT & SA v. Riley*,
  940 F. Supp. 348 (D.D.C. 1996) ............................................................................12, 13

*Bartels v. Riley*,
  No. 98-8885 (11th Cir. June 29, 1999) ..........................................................13, 14, 15, 16

*Beharry v. Ashcroft*,
  329 F.3d 51 (2d Cir. 2003)...................................................................................18, 19, 20

*Bell Atl. Comp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................9

*Block v. North Dakota*,
  461 U.S. 273 (1983)........................................................................................................10

*Brevil v. Jones*,
  283 F. Supp. 3d 205 (S.D.N.Y. 2018).............................................................................21

*Calise Beauty Sch., Inc. v. Riley*,
  941 F. Supp. 425 (S.D.N.Y. 1996) ...............................................................................10

*De La Mota v. United States Dep't of Educ.*,
  No. 02 Civ. 4276 (LAP), 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003) .................10, 16

*DiNello v. United States Dep't of Educ.*,
  No. 06 Civ. 2763, 2006 WL3783010 (N.D. Ill. Dec. 21, 2006) ......................................11

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)................................................................................................9

*Expedient Servs., Inc. v. Weaver*,
  614 F.2d 56 (5th Cir. 1980) ...............................................................................11, 12, 13

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011)................................................................................................9

*FDIC v. Meyer*,
  510 U.S. 471 (1994)........................................................................................................16

*Green v. United States*,
  163 F. Supp. 2d 593 (W.D.N.C. 2000) .....................................................................11, 16

*Jones v. United States Dep't of Educ.*,
    No. 08 Civ. 4404 (JS), 2010 WL 2710624 (E.D.N.Y. July 6, 2010)..........................15, 16

*Keene Corp. v. Fiorelli (In re Joint E. & S. Dist. Asbestos Litig.)*,
    14 F.3d 726 (2d Cir. 1993).................................................................................16

*Krebs v. Charlotte Sch. of Law, LLC*,
    No. 17 Civ. 190 (GCM), 2017 WL 3880667 (W.D.N.C. Sep. 5, 2017)...........................21

*Lopes v. Dep't of Soc. Servs.*,
    696 F.3d 180 (2d Cir. 2012)..............................................................................17, 18

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...............................................................................8

*McCarthy v. Madigan*,
    503 U.S. 140 (1992).........................................................................................19

*McGowan v. United States*,
    825 F.3d 118 (2d Cir. 2016)...............................................................................8

*Minda v. United States*,
    851 F.3d 231 (2d Cir. 2017)...........................................................................8, 10

*N.Y. Life Ins. Co. v. United States*,
    724 F.3d 256 (2d Cir. 2013)..............................................................................9

*OneSimpleLoan v. United States Sec'y of Educ.*,
    No. 06 Civ. 2979 (RMB), 2006 WL 1596768 (S.D.N.Y. June 9, 2006)...........................10

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
    830 F.3d 152 (2d Cir. 2016)..............................................................................17

*Ross v. Bank of Am., N.A. (USA)*,
    524 F.3d 217 (2d Cir. 2008)..............................................................................18

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016)................................................................................3

*Thomas v. Bennett*,
    856 F.2d 1165 (8th Cir. 1988) .......................................................................14, 15, 16

Statutes, Legislative History, and Administrative Sources
Higher Education Act of 1965, Pub. L. 89-329 (Nov. 8, 1965)........................................... *passim*

20 U.S.C. § 1071.......................................................................................................3, 18

20 U.S.C. § 1078(c) ...................................................................................................3, 18

20 U.S.C. § 1082(a)(2) .................................................................................. *passim*

20 U.S.C. § 1087(a) ...............................................................................................3

20 U.S.C. § 1087e(h) .........................................................................................3, 19

Regulations and Federal Register Notices
16 C.F.R. § 433.2 ...................................................................................................5

34 C.F.R. § 682.200 .......................................................................................3, 5, 18

34 C.F.R. § 685.206(c)(1) ............................................................................. *passim*

34 C.F.R. § 682.209(g) ..................................................................................5, 18, 20

Notice of Interpretation, 60 Fed. Reg. 37,768 (July 21, 1995) ..........................4, 5, 17

Final Regulations, 72 Fed. Reg. 61,960 (Nov. 1, 2007) .......................................5, 6

Student Assistance General Provisions, 81 Fed. Reg. 39,330 (June 16, 2016) ...........6

Legislative History
*Abuses in Federal Student Aid Programs*, S. Rep. No. 102-58 (1991) ........................3

Administrative Sources

U.S. Department of Education, *Fact Sheet: Protecting Students from Abusive Career Colleges*
(June 8, 2015)...................................................................................................6

U.S. Department of Education, Office of Inspector General, *Federal Student Aid's Borrower
Defense to Repayment Loan Discharge Process* (Dec. 8, 2017) .......................................7

U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid
Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017)...........................................7, 20

Defendant Betsy DeVos, Secretary of the United States Department of Education (the "Government," the "Secretary," or the "Department"), by her attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of her motion to dismiss the complaint of plaintiffs Tina Carr and Yvette Colon pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case concerns plaintiffs' pending applications to the Department for relief from their education loans due to their assertion of what is known as a "borrower defense." A borrower may assert a borrower defense to the collection of an education loan, and potentially be relieved of her debt, when she has taken out the loan in reliance on an educational institution's misrepresentations about such matters as its accreditation or its students' post-graduation employment rates. Plaintiffs are among tens of thousands of individuals who have applied to the Department for relief from their education loans in a wave of borrower defense applications that began in mid-2015. Plaintiffs' borrower defense applications are pending before the Department and there has been no attempt to collect against their loans since their applications were filed.

Instead of waiting for the Department to adjudicate their applications in due course, however, plaintiffs now are trying to turn their right to assert a borrower defense to loan collection into an affirmative cause of action so that they can seek judicial relief while their applications are pending. These efforts fail for multiple reasons.

First, while Congress provided a waiver of sovereign immunity for specified types of actions against the Department, it expressly excluded actions that essentially seek injunctive relief. As the relief sought here effectively would preclude collection on the loans, this action is

sufficiently similar to one for injunctive relief so as to fall outside of the sovereign immunity

waiver.  The Court therefore lacks subject matter jurisdiction with respect to plaintiffs' claims

against the Government.

Second, neither the borrower defense regulation applicable to Carr's Direct Loans nor the

borrower defense provisions in the loan agreements for Colon's Federally Financed Education

Loans create a cause of action against the Government.  Thus, even if the Court had subject

matter jurisdiction, this action should be dismissed as against the Government for failure to state

a claim.

Finally, plaintiffs' applications for relief are still pending with the Department.  Thus this

action is not ripe because plaintiffs have not exhausted their administrative remedies.

The Court should dismiss the complaint.

## BACKGROUND[1]

### A.    The Loans at Issue

Plaintiffs' case against the Government involve two types of loans.  In Count One, Carr

seeks a declaration that loans she received through the William D. Ford Federal Direct Loan

Program ("Direct Loans") are unenforceable based on her assertion of a borrower defense.  *See*

Am. Compl. ¶¶ 205-11.  In Count Two, Colon seeks a declaration that her Federal Family

Education Loans ("FFELs") are unenforceable due to her assertion of a borrower defense.  *See*

*id.* ¶¶ 212-20.[2]  Each of these types of loans is authorized under Title IV, Part D of the Higher

Education Act of 1965 (the "HEA") of 1965, as amended.  *See* Pub. L. No. 89-329, 79 Stat. 1219

---

[1] The Government assumes the truth of the facts asserted in the Complaint for purposes of its
motion only.

[2] The Complaint also contains a claim arising from Colon's private loans that is not addressed
substantively here because it is not asserted against the Government.  *See* Compl. ¶¶ 221-28
(Claim Three).

(Nov. 8, 1965) (codified at 20 U.S.C. §§ 1070-1099).  Under the Direct Loan program, the

Government makes loans directly to the student.  *See* 20 U.S.C. § 1087(a) *et seq.*  Under the

FFEL program, participating private lenders use their own funds to make loans to the student; the

loans are then insured by guaranty agencies (state or private non-profit organizations), and

reinsured by the Department.  *Id.* §§ 1071, 1078(b)-(c); 34 C.F.R. § 682.200 (defining guaranty

agency); *see generally Salazar v. King*, 822 F.3d 61, 65 (2d Cir. 2016).

**B.     The Borrower Defenses**

      **1.     The Borrower Defense Provisions for Direct Loans**

The borrower defense regulation that applies to Direct Loans such as Carr's loans

originated with amendments that Congress made to the HEA in 1993 in response to findings of

pervasive fraud by private, for-profit trade and vocational postsecondary education institutions

that left students with large debts and inadequate education.  *See Salazar*, 822 F.3d at 66 (citing

*Abuses in Federal Student Aid Programs*, S. Rep. No. 102-58, at 10 (1991)).  The 1993 HEA

amendments provided the Secretary with exclusive power to "specify in regulations which acts

or omissions of an institution of higher education a borrower may assert as a defense to

repayment" of a Direct Loan.  20 U.S.C. § 1087e(h).

In 1994, as an exercise of this statutory authority, the Secretary promulgated the

following regulation making borrower defenses available in collection proceedings for Direct

Loans:

> In any proceeding to collect on a Direct Loan, the borrower may assert as a
> defense against repayment, any act or omission of the school attended by the
> student that would give rise to a cause of action against the school under
> applicable State law.

34 C.F.R. § 685.206(c)(1).

The regulation then lists examples of such "proceedings," namely, administrative proceedings for tax refund offset, wage garnishment, salary offset for federal employees, and consumer reporting agency reporting.  *Id*. § 685.206(c)(1)(i)-(iv).  The borrower defense regulation thus speaks in sole terms of the borrower's assertion of a defense against repayment. *See id*.

Indeed, one year after the Department promulgated the regulation, it clarified that the regulation "does not provide a private right of action for a borrower" and "is not intended to create new Federal rights."  Notice of Interpretation, 60 Fed. Reg. 37,768, 37,769 (July 21, 1995).

In addition to section 685.206(c), the Direct Loan Master Promissory Note also provides a borrower defense provision that similarly speaks in terms of a defense to repayment:

> In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done.  You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law.  If you believe that you have a defense against repayment of your loan, contact the Direct Loan Servicing Center.

Declaration of Michael J. Byars dated April 6, 2018 (the "Byars Declaration") Ex. A; *see also* Am. Compl. ¶ 175 (asserting that Carr's Direct Loans contain this provision).

### 2.    The Borrower Defense Provisions for FFELs

Beginning in 1994, the Master Promissory Note for FFELs has included a borrower defense provision that provided for relief against the holder of the loans:

> If this loan is made by the school, or if the proceeds of this loan are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract or business arrangement, *any holder of this Note* is subject to all claims and defenses which I could assert against the school.  My recovery under this provision shall not exceed the amount I paid on this loan.

Am. Compl. ¶ 173 (emphasis added).[3]  This provision is based on the Federal Trade Commission's ("FTC") so-called "Holder Rule," which appears at 16 C.F.R. § 433.2 and requires consumer credit contracts to provide notice that the "holder" of the contract is subject to the claims and defenses that the debtor could assert against the seller.  *See* Final Regulations, 72 Fed. Reg. 61,960, 61,978 (Nov. 1, 2007).[4]

The Department did not promulgate a borrower defense regulation for FFELs until some fourteen years later, in 2007.  It originally had intended to follow up on its promulgation of section 685.206(c) with a more extensive borrower defense regulation for both Direct Loans and FFELs.  *See* 60 Fed. Reg. at 37,768-69.  Toward that end, in early 1995, the Department had convened an advisory committee comprised of representatives of institutions of higher education, higher education organizations, student loan lenders, guaranty agencies, loan servicers, legal aid organizations, students, and the Department.  *See id.*  Based on the recommendation of the non-federal representatives on the committee, however, the Department decided not to make further regulatory changes at that time.  *See id.*

In 2007, the Department incorporated the Holder Rule into its regulations for FFELs.  *See* 72 Fed. Reg. at 62,001.  The FFEL borrower defense regulation specifies that *"[a]ny lender holding a loan* is subject to all claims and defenses that the borrower could assert against the school."  34 C.F.R. § 682.209(g) (emphasis added).  The Department explained that the purpose

---

[3] The Department does not hold Colon's FFELs, *see* Am. Compl. ¶¶ 21-22 (alleging upon information and belief that one of several non-federal defendants holds Colon's FFELs), and is not in possession of a full copy of her Master Promissory Note.  The Government therefore relies on the Amended Complaint's recitation of the Borrower Defense language of her Master Promissory Note.  *See id.* ¶¶ 173-74.

[4] A "holder" is defined in the Department's regulations to mean "[a]n eligible lender owning an FFEL Program loan including a Federal or State agency or an organization or corporation acting on behalf of such an agency and acting as a conservator, liquidator, or receiver of an eligible lender."  34 C.F.R. § 682.200.

of adding the FFEL regulation was to extend the Holder Rule to FFEL borrowers attending non-profit institutions (borrowers attending for-profit schools already being covered by the FTC's Holder Rule under the FTC's own authority and the FFEL Program promissory note).  *See* 72 Fed. Reg. at 61,977.

In sum, under the plain terms of either of these provisions (*i.e.*, whether contractual or regulatory), the borrower defense for FFELs may be asserted only against the holder of the FFEL, and not against the Department.

**C.    The Explosion in Borrower Defense Applications Beginning in 2015**

Although, as described above, borrower defense provisions first came into effect in 1994, for many years borrowers seldom sought such relief from the Department.  This all changed, however, with the May 2015 bankruptcy filing of Corinthian Colleges, Inc. ("Corinthian"), a publicly traded company operating numerous postsecondary schools with over 70,000 students at more than 100 campuses nationwide.  *See* Student Assistance General Provisions, 81 Fed. Reg. 39,330, 39,335 (June 16, 2016).  Corinthian's closure has been described as "a landmark event for the concept of borrower defense to repayment" by the Special Master appointed by the Department to "oversee borrower defense issues" in its wake.  U.S. Department of Education, *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015) ("First Special Master Report"), at 5, *available at* https://www.ed.gov/news/press-releases/fact-sheet-protecting-students-abusive-career-colleges.

The Department experienced an enormous increase in borrower defense applications beginning in 2015.  In the two decades prior to June 2015, the Department received five such applications; the number of applications received from June 25, 2015 through June 29, 2016 increased to 26,603, followed by another 46,274 through January 20, 2017, and another 25,991

through July 24, 2017.  *See* U.S. Department of Education, Office of Inspector General, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process*, (Dec. 8, 2017), at 6, *available at* https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

The Department has been and is currently engaged in the process of reviewing, adjudicating, and processing these borrower defense applications.  As of January 20, 2017, the Department had adjudicated over forty percent of the applications it had received.  *See id.* at 34 n.22.  In a December 20, 2017 press release, the Department announced that it had adjudicated another 21,500 applications, all from former Corinthian students, 12,900 of which were approved for discharge and 8,600 of which were denied.  *See* U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017), *available at* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.  The announcement further explained that the remaining applications "will be adjudicated systematically."  *Id.*

D.     **The Amended Complaint**

According to the Amended Complaint, Carr began her studies at Melville, New York campus of Sanford-Brown, an affiliate of Sanford-Brown Institute, in March 2011, and Colon attended Sanford-Brown Institute's New York City campus beginning in September 2006.  *See* Am. Compl. ¶¶ 10, 11, 104, 127.  The Amended Complaint further alleges that these schools had made misrepresentations to plaintiffs regarding, among other things, their graduates' employment statistics and job prospects as well as the schools' accreditation.  *See, e.g., id.* ¶¶ 96-108, 122-38.  Plaintiffs maintain that they obtained the loans in question because they relied on these misrepresentations.  *See id.* ¶¶ 110, 139.

In March 2015, plaintiffs each wrote to the Department to assert borrower defenses to repayment of their student loans, attaching a number of supporting documents.  *See id.* ¶¶ 183, 186.  The Department has received these applications and is reviewing them.  The Department has not yet decided whether to approve plaintiffs' applications.

## LEGAL STANDARDS

### A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Id.*

A court lacks subject matter jurisdiction over a suit against the United States where there is no applicable waiver of sovereign immunity:  "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Id.* (alterations and internal quotation marks omitted); *see also McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (same).  A waiver of sovereign immunity "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires."  *Minda v. United States*, 851 F.3d 231, 237 (2d Cir. 2017) (internal quotation marks omitted).  The plaintiff bears the burden of establishing that a waiver of sovereign immunity applies.  *See Makarova*, 201 F.3d at 113.

### B.    Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of a claim on the ground that it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion,

the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Comp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened

fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the

line from conceivable to plausible."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) (quoting *Twombly*, 550 U.S. at 570).  A court should "draw all reasonable inferences in

[the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648

F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  In addition to the facts alleged in

the complaint, the court also may consider "any written instrument attached to the complaint as

an exhibit or incorporated in the complaint by reference, as well as documents upon which the

complaint relies and which are integral to the complaint."  *N.Y. Life Ins. Co. v. United States*, 724

F.3d 256, 258 n.1 (2d Cir. 2013) (internal quotation marks omitted).

## ARGUMENT

### POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE UNITED STATES HAS NOT WAIVED ITS SOVEREIGN IMMUNITY FOR CLAIMS SEEKING INJUNCTIVE RELIEF

Section 1082(a)(2) of the HEA provides a limited waiver of the Department's sovereign

immunity from suit.  This provision specifies that

> [i]n the performance of, and with respect to, the functions, powers, and duties [set
> forth in the HEA], the Secretary may . . . sue and be sued in . . . any district court
> of the United States . . . ; but no attachment, injunction, garnishment, or other
> similar process, mesne or final, shall be issued against the Secretary.

20 U.S.C. § 1082(a)(2); *see also, e.g.*, *De La Mota v. United States Dep't of Educ.*, No. 02 Civ. 4276 (LAP), 2003 WL 21919774, at *4 (S.D.N.Y. Aug. 12, 2003) (discussing the limited waiver of sovereign immunity provided in section 1082(a)(2)).

The Court must strictly construe the terms of section 1082(a)(2):  "[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."  *Block v. North Dakota*, 461 U.S. 273, 287 (1983).  A waiver of sovereign immunity "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires."  *Minda*, 851 F.3d at 237 (internal quotation marks omitted).

Courts have concluded that section 1082(a)(2) precludes relief expressly designated as an injunction.  *See, e.g.*, *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996) (denying plaintiffs' request for a preliminary injunction and explaining that, "[o]n its face, Section 1082 flatly prohibits the issuance of any injunction against the Secretary in relation to his powers and duties under the HEA").  Plaintiffs maintain, however, that their designation of their action as one for declaratory relief means that the injunction exclusion does not apply and this case can proceed.  *See* ECF No. 28, at 2.  This is incorrect because the relief sought here is sufficiently injunctive in nature to fall within the injunction exclusion.

While "courts have held that [section 1082(a)(2)] does not necessarily bar declaratory relief," *OneSimpleLoan v. United States Sec'y of Educ.*, No. 06 Civ. 2979 (RMB), 2006 WL 1596768, at *6 (S.D.N.Y. June 9, 2006), courts have nevertheless long recognized that a sovereign immunity waiver's exclusion of actions seeking an "injunction . . . or other similar process" bars claims styled as declaratory or other relief that nevertheless serve to accomplish the same result as injunctive relief, *see, e.g.*, *Am. Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d

1250, 1254 (9th Cir. 1999) ("[I]t seems obvious that the anti-injunction bar [of section 1082(a)(2)] cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for 'declaratory relief.'"); *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56, 58 (5th Cir. 1980) (holding that similarly worded injunction exclusion in Small Business Act's sovereign immunity waiver required dismissal, reasoning that "the plaintiff's complaint cannot fairly be construed as seeking a declaratory judgment; the plaintiff still seeks relief equivalent to injunctive relief"); *DiNello v. United States Dep't of Educ.*, No. 06 Civ. 2763, 2006 WL3783010, at *4 (N.D. Ill. Dec. 21, 2006) ("Declaratory relief is distinct from injunctive relief. . . .  However, declaratory relief is not permitted if it is coercive in nature or otherwise similar to injunctive relief."); *Green v. United States*, 163 F. Supp. 2d 593, 597 (W.D.N.C. 2000) ("An action that seeks to prohibit the government from collecting a debt seeks injunctive relief— a type of action over which this court lacks subject-matter jurisdiction because the government continues to enjoy sovereign immunity from suit as to such claims in accordance with [section 1082(a)(2)].").

Courts have distinguished between declaratory relief that is allowable and that which is essentially injunctive in nature, and thus barred by the injunction exception, in two principal ways.  As explained below, courts have looked to whether the relief is based on past events (in which case it is considered declaratory and allowed to proceed) or is anticipatory or prospective (in which case it is considered injunctive and therefore barred).  Courts also have examined whether the relief targets a specific means of collection on the loans at issue (allowed as declaratory relief) or instead precludes all means of loan collection (barred as injunctive relief).

**A.      Plaintiffs' Claims Are Injunctive in Nature Because They Seek Prospective Relief**

Courts have concluded that a request styled as one for declaratory relief falls within the HEA's injunction exclusion where the relief sought is coercive with respect to future events.  For example, *American Association of Cosmetology Schools* involved a challenge to the Department's appeals process for its determinations of an educational institution's eligibility for the FFEL program; thus, the case would determine whether plaintiffs could participate in that program going forward.  170 F.3d at 1252-53.  The Ninth Circuit concluded that the declaratory relief sought by plaintiffs was sufficiently injunctive in nature to be barred by section 1082(a)(2).  *See id.* at 1254.  The Court reasoned that the requested declaratory judgment would render past adverse decisions null and void and, thus, under Department regulations, the Secretary would be required to reinstate these institutions to the FFEL program while the administrative appeal was pending.  *See id.* (citing 34 C.F.R. § 668.17(b)(6) (participation continues until Secretary issues decision on appeal)).  Thus, the court held that "the relief requested is plainly coercive and therefore prohibited by the anti-injunction statute."  *Id.*

Similarly, in *Expedient Services*, the Fifth Circuit concluded that the plaintiff's request for declaratory relief to set aside an agency decision—thus allowing plaintiff to bid on a contract—was "essentially no different than a request for an injunction preventing the agency from continuing to enforce its decision."  614 F.2d at 58.  The court held that such relief was barred by the injunction exclusion in the Small Business Act's waiver of sovereign immunity, 15 U.S.C. § 634(b)(1), which contained the same "no injunction . . . or other similar process" language as does the HEA, and thus the suit should have been dismissed.  *See* 614 F.2d at 58.

And in *Bank of America NT & SA v. Riley*, the district court held that section 1082(a)(2) did not bar financial institutions from suing to obtain $16 million in special allowances allegedly

already due, reasoning, in part, that the requested relief was not "anticipatory" in nature.  940 F.

Supp. 348, 351 (D.D.C. 1996).

Under this case law, plaintiffs' claim for declaratory relief plainly falls within the

injunction exclusion.  Their requested declaration essentially seeks anticipatory relief against all

future collection activity on their loans by the Department.  *See* Am. Compl. 35-36 ¶¶ A-C

(seeking declaration that plaintiffs' loans are "not legally enforceable"); ECF No. 28, at 2

(stating that plaintiffs seek a declaration that they have a "valid defense to repayment" of their

loans).  Plaintiffs' requested declaratory relief does not seek an adjudication of past rights, the

type of relief allowed to proceed in *Bank of America NT & SA*, 940 F. Supp. at 349 (entitlement

to interest allegedly due for periods prior to the complaint).  Plaintiffs' requested relief is thus

barred as "plainly coercive and therefore prohibited by [section 1082(a)(2)]."  *Am. Ass'n of*

*Cosmetology Sch.*, 170 F.3d at 1254; *see also Expedient Servs.*, 614 F.2d at 58; *Bank of Am. NT*

*& SA*, 940 F. Supp. at 351.

    **B.**    **Plaintiffs' Claims Are Injunctive in Nature Because They Do Not Target a Discrete Avenue for Collection but Instead Would Effectively Constitute a Complete Bar**

In certain circumstances, courts have found a claim for declaratory judgment to fall

outside the injunctive exclusion of section 1082(a)(2) even though such relief would have

prospective effect.  In these cases, the declaratory relief requested was targeted at the specific

manner in which a delinquent education loan was being collected and would not preclude other

means of collection.

For example, in *Bartels v. Riley*, plaintiffs asserted a claim for declaratory relief that

challenged the Secretary's wage garnishment procedures.  *See* No. 98-8885, slip op. at 10-13

- 13 -

(11th Cir. June 29, 1999) (unpublished).[5]  Plaintiffs maintained that these garnishment procedures violated due process because they failed to provide delinquent borrowers sufficient time to request a hearing, a convenient location for the hearing, an administrative record of the hearing, or sufficient notice of their rights.  *See id.* at 12.  The court of appeals explained that declaratory relief in such circumstances "does not amount to the equivalent of injunctive relief." *Id.* at 11.  The court reasoned that the key distinction that took the claim out of the injunction exclusion was that the declaratory relief sought would not be an absolute bar to collection:

> Granting this relief would not prevent the Secretary from collecting on loans altogether; it would only require the use of proper and constitutional garnishment and other collection measures.  Consequently, the HEA's 'anti-injunction' provision does not deprive the court of jurisdiction to consider the appropriateness of declaratory relief on the borrowers' due process claims.

*Id.*

Similarly, in *Thomas v. Bennett*, plaintiff challenged the collection of her delinquent student loan debt through set-off against her tax refunds on the ground that the statute of limitations for breach-of-contract actions had expired.  856 F.2d 1165, 1166-67 (8th Cir. 1988). At the time the suit was filed, part of the debt already had been collected via offset against plaintiff's 1985 tax refund, and a similar offset was proposed against her 1986 tax refund.  *Id.* at 1166.  By the time the appeal was argued, the 1986 offset already had occurred and the debt was nearly fully paid.  *Id.* at 1167.  The Eighth Circuit held that the plaintiff's request to enjoin further collection of the debt through setoff against her future tax refunds was barred by section 1082(a)(2), but also concluded that the district court had properly considered plaintiff's requests for "declaratory relief and 'such other relief as is just and equitable.'"  *Id.* at 1168.  These latter

---

[5] The Eleventh Circuit permits its unpublished opinions to be "cited as persuasive authority," although they are not considered binding precedent.  11 Cir. R. 36-2.  A copy of the unpublished *Bartels* opinion is attached to the Byars Decl. as Ex. B.

requests concerned plaintiff's statute of limitations defense, and such relief would have required the return of the already intercepted funds.  *Id.* at 1168-69 & n.3.[6]  The Eighth Circuit held that the tax refund setoff was a proper avenue of collection; the expiration of the statute of limitations had "merely eliminate[d] one potential remedy—the filing of a lawsuit seeking money damages."  *Id.* at 1169.  Thus, the declaratory relief sought by plaintiff did not constitute a complete defense to collection and was allowed to proceed.  *See id.* (noting that plaintiff "has not asserted that her loan has become substantively unenforceable").

And in *Jones v. United States Department of Education* (cited by plaintiffs in their premotion letter, *see* ECF No. 28, at 2), the district court concluded that the injunction exclusion did not bar plaintiff's claim for declaratory relief challenging the Department's set-off of his Social Security benefits.  No. 08 Civ. 4404 (JS), 2010 WL 2710624, at *3 (E.D.N.Y. July 6, 2010).  Although the district court did not discuss its reasoning in this regard, its holding is consistent with *Bartels* and *Thomas* in that plaintiff's requested relief, if granted, addressed only the Social Security levy and would not preclude the Secretary from pursuing other means for collection.

The declaratory relief sought by plaintiffs here falls within the injunction exclusion because it would impose a total ban on future collection of their loans.  Plaintiffs have made clear that they are challenging the enforceability of their loans as a general matter—they seek a blanket "valid defense" to repayment.  *See* Am. Compl. 35-36 ¶¶ A-C; ECF No. 28, at 2.  The case law reflects that such relief, regardless of what label a plaintiff gives it, is the equivalent of

---

[6] To the extent that the Eighth Circuit suggested in *Thomas* that plaintiff's debt might be fully paid by a third tax refund set-off "by the time judicial proceedings have been fully resolved," 856 F.2d at 1168, and that the case should not be deemed moot because identical legal issues would be raised in a suit "seeking return of the intercepted funds," *id.* at 1168 n.3, that case also comports with the former category of decisions that permit declaratory relief to proceed if it is not prospective in nature.

injunctive relief for purposes of section 1082(a)(2).  *See, e.g.*, *Green*, 163 F. Supp. 2d at 597 ("An action that seeks to prohibit the government from collecting a debt seeks injunctive relief."); *cf. Thomas*, 856 F.2d at 1169 (plaintiff "has not asserted that her loan has become substantively unenforceable").  Plaintiffs cannot demonstrate that the relief they seek would bar only certain avenues for collection—the reasoning that permitted declaratory relief to go forward in *Bartels*, slip op. at 10-13 (specific wage garnishment procedures); *Thomas*, 856 F.2d at 1168-69 (tax refund set-off); and *Jones*, 2010 WL 2710624, at *3 (set-off against Social Security benefits).  Because plaintiffs' requested declaration would provide a complete defense to collection of their loans, rather than restrict a particular means of collection, it would "prevent the Secretary from collecting on [plaintiffs'] loans altogether," *Bartels*, slip op. at 11, and for that reason also falls within the injunction exclusion to this Court's jurisdiction to hear their claim.

**POINT II**

**PLAINTIFFS FAIL TO STATE A CLAIM**

Even if the Court were to find that the Department's sovereign immunity has been waived, plaintiffs' action fails as against the Department because they have not asserted a valid claim for relief.  *See, e.g.*, *De La Mota*, 2003 WL 21919774, at *5 ("Once a waiver of sovereign immunity has been established, 'the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief.'" (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 (1994)).  The Declaratory Judgment Act does not, in itself, provide an independent cause of action.  *See, e.g.*, *Keene Corp. v. Fiorelli (In re Joint E. & S. Dist. Asbestos Litig.)*, 14 F.3d 726, 731 (2d Cir. 1993).  Therefore, plaintiffs must find a basis to state a claim in the contractual provisions and the applicable regulations for their loans.  Carr and Colon cannot do so, albeit for different reasons.

### A.   Carr's Direct Loan Borrower Defense Is Only a Defense to Collection

The borrower defense provisions relevant to Carr's claim are contained in the Direct Loan Master Promissory Note and in section 685.206(c).  Both of these provisions provide notice to the borrower of a possible defense that she may assert against collection.  *See* Byars Decl. Ex. A at 7 (referring to "a defense against collection of your loan" and "a defense against repayment"); Am. Compl. ¶ 175 (same); 34 C.F.R. § 685.206(c) (referring to "a defense against repayment" that may be asserted "[i]n any proceeding to collect on a Direct Loan").

These terms are to be interpreted according to their plain meaning.  *See Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (contractual language); *Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 188 (2d Cir. 2012) (regulatory language). Under a plain language interpretation, the Master Promissory Note and section 685.206(c) provide only a defense to collection, and not an independent cause of action against the Department.  *See* Byars Decl. Ex. A at 7; 34 C.F.R. § 685.206(c); *see also* 60 Fed. Reg. at 37,769 (explaining that section 685.206(c) "does not provide a private right of action for a borrower" and "is not intended to create new Federal rights").   To the extent that the regulation permits Carr to assert a borrower defense in a "proceeding to collect on [her] Direct Loan[s]," this action is not such a proceeding, as the Department does not seek collection here; nor has it been seeking collection of Carr's loan since approximately the time she submitted her borrower defense application in early 2015.  34 C.F.R. § 685.206(c); *see also* Am. Compl. ¶ 185 (asserting that the Department has placed Carr's loans in "stopped collection" status).

Count One therefore fails to state a claim.

**B.      Colon's FFEL Borrower Defense May Be Asserted Only Against the Holder of Her Loans**

The borrower defense provisions relevant to Colon's claim are contained in the FFEL Master Promissory Note and in section 682.209(g).  The plain language of these provisions permits the borrower to assert claims and defenses against only one entity—*i.e.*, the holder of the loan.  *See* Am. Compl. ¶ 173 ("[A]ny holder of this Note is subject to all claims and defenses which I could assert against the school."); 34 C.F.R. § 682.209(g) ("Any lender holding a loan is subject to all claims and defenses that the borrower could assert against the school.").  Department regulations define "holder" to mean essentially the "own[er]" of the FFEL (or an entity acting as the conservator, liquidator, or receiver on behalf of the owner of the FFEL).  34 C.F.R. § 682.200.  FFELs are funded by private entities using their own assets; these entities own the FFELs that they funded.  *See* 20 U.S.C. § 1071.  The Government is not the owner, and thus is not the holder, of Colon's FFELs.  *See* Am. Compl. ¶ 22 (asserting upon information and belief that one of the non-federal defendants is the holder of Colon's FFELs (and, by implication, that the Government is not)).

To the extent that Colon has suggested that the Government's status as the ultimate insurer of FFELs brings it within the Holder Rule, *see* ECF No. 28, at 3; *see also* 20 U.S.C. § 1078(c), such an assertion fails because it does not comport with the plain language of the definition of "holder" set forth in 34 C.F.R. § 682.200.  *See Lopes*, 696 F.3d at 188 (regulation is to be interpreted by the plain meaning of its terms).  While the Government might someday hold Colon's FFELs, it does not presently, and any claim based on the possibility that it might someday hold Colon's FFELs is speculative and therefore not ripe for adjudication.  *See, e.g.*, *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (explaining that ripeness

requires "that the plaintiff's injury be imminent rather than conjectural or hypothetical" (alterations omitted)).

Count Two therefore fails to state a claim against the Secretary.

## POINT III

## PLAINTIFFS HAVE NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

Finally, even if the Court had subject matter jurisdiction, and even if the plaintiffs had valid causes of action against the Department, the Court nevertheless should dismiss this action because plaintiffs have not exhausted their administrative remedies.  "The requirement of administrative exhaustion can be either statutorily or judicially imposed."  *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (Sotomayor, J.); *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.  But where Congress has not clearly required exhaustion, sound judicial discretion governs.").

Although there is no explicit statutory exhaustion provision applicable here, the Court should judicially require exhaustion.  Requiring plaintiffs fully to exhaust the Department's administrative evaluation of their borrower defense applications before they file a lawsuit would be consistent with the purposes of the judicial exhaustion doctrine, which "include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary."  *Beharry*, 329 F.3d at 62.

These purposes would be served by requiring exhaustion here.  Exhaustion would be consistent with Congress's authorization of the Secretary to promulgate borrower defense regulations for Direct Loans, 20 U.S.C. § 1087e(h), as well as the Department's efforts to develop a comprehensive scheme for borrower defenses that includes contractual provisions and regulations applicable to different types of loans.  *See, e.g.*, Byars Decl. Ex. A; Am. Compl.

¶¶ 173, 175; 34 C.F.R. §§ 682.209(g), 685.206(c)(1).  Exhaustion also would support the Department's ongoing efforts to analyze and resolve in a consistent and reasoned manner the large number of borrower defense applications that followed the collapse of Corinthian and other educational institutions.  *See* U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (explaining the Department's efforts to improve its review and systematic adjudication of remaining claims), *available at* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.  Requiring exhaustion here is thus particularly appropriate given that plaintiffs themselves invoked this administrative process when they filed their applications in 2015.  Also, exhaustion would potentially resolve many borrower defense claims before they reach court, rendering judicial review unnecessary.  *See, e.g.*, *id.* (reflecting that approximately 12,900 of 21,500 borrower defense applications (sixty percent) from former Corinthian students were granted).

Judicial exhaustion is subject to a number of exceptions that allow courts to excuse a party's failure to exhaust administrative remedies:

> Specifically, exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.

*Beharry*, 329 F.3d at 62.

None of these justifications for circumventing the exhaustion requirement applies here. The Department has granted applications for relief based on an assertion of a borrower defense and continues to evaluate such applications, so plaintiffs have a genuine opportunity for adequate relief.  *See, e.g.*, U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (announcing 21,500 adjudicated applications

for borrower defense discharge), *available at* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.  Plaintiffs have not sought immediate relief based on irreparable injury.  *See* Am. Compl. 35-36 ¶¶ A-E (listing relief requested).  There is no reason to deem the Department's administrative process for evaluating borrower defense applications to be futile.  *See, e.g.*, *Brevil v. Jones*, 283 F. Supp. 3d 205, 215 (S.D.N.Y. 2018) ("Pursuing administrative remedies may be futile because the administrative procedures do not provide an adequate remedy, or when the agency has predetermined the issue before it." (internal quotation marks and citations omitted)).  Nor have plaintiffs raised a substantial constitutional question.  *See* Am. Compl. ¶¶ 205-20 (raising only statutory and regulatory bases for claims against the Secretary).

Nor is plaintiffs' suggestion that the Department's adjudication process has been delayed due to the delay in implementation of new borrower defense rules sufficient to justify waiving exhaustion.  *See* Am. Comp. ¶ 189.  As evidenced by the Department's recent decisions on the former Corinthian students' applications, the Department is still adjudicating applications under the existing regulations.  In any event, "[m]ere complaints about having to wait for a decision from the DOE are insufficient to waive the exhaustion requirement."  *Krebs v. Charlotte Sch. of Law, LLC*, No. 17 Civ. 190 (GCM), 2017 WL 3880667, at *12 (W.D.N.C. Sep. 5, 2017).

## CONCLUSION

For the reasons set forth above, the Court should dismiss the amended complaint.

Dated:  New York, New York
         April 6, 2018

                                             Respectfully submitted,

                                             GEOFFREY S. BERMAN
                                             United States Attorney

                                  By:  *s/ Michael J. Byars*
                                             MICHAEL J. BYARS
                                             Assistant United States Attorney
                                             86 Chambers Street, 3rd Floor
                                             New York, New York  10007
                                             Telephone:  (212) 637-2793
                                             Facsimile:  (212) 637-2717
                                             E-mail:  michael.byars@usdoj.gov