# Exhibit E



THE SECRETARY OF EDUCATION
WASHINGTON, DC 20202

August 4, 2014

Elizabeth Warren
United States Senate
Washington, DC 20510

Dear Senator Warren:

Thank you for your letter of June 25, 2014, concerning Corinthian Colleges, Inc. (Corinthian). The U.S. Department of Education (Department) is doing everything it can to protect students as a result of the sale or closure of Corinthian's institutions of higher education, including seeking to avoid or minimize the disruption to students' lives and educational aspirations that you note could otherwise result from their abrupt closure. At the same time, we are continuing to perform our important oversight work of Corinthian and will hold the company accountable for compliance with the requirements of the Higher Education Act of 1965, as amended (HEA) and our regulations.

I am pleased to report that on July 9, 2014, the Department reached an agreement with Corinthian on a process to govern the eventual closure and sale of its institutions. The Operating Agreement covers certain issues that are directly responsive to some of the issues you raised in your letter, and I appreciate the opportunity to provide further detail. However, please note that the recent events unfolded at an accelerated pace; that the scope of potential institutional closures and sales associated with a single corporate entity is unprecedented; and that circumstances remain quite fluid and will continue to evolve. As a result, we will continue to review our plans and processes going forward to ensure that we are continuing to do all we can to protect both students' and taxpayers' interests as Corinthian's participation in the Federal Student Aid programs ends.

The agreement reached with Corinthian includes features that your letter urged the Department to consider. For example, Corinthian will cease to enroll new students in certain circumstances described below, and will make disclosures to affected students concerning their options and the status of their respective institutions. In particular, and with respect to your specific questions:

- As of July 9, 2014, Corinthian has identified those institutions it plans to sell, as well as those institutions it plans to close *after* providing students who are already enrolled with time to complete their educational programs ("teach-out" institutions). Corinthian is required, under the Operating Agreement, to cease enrollment of new students at teach-out institutions. In some cases, Corinthian may work with another institution so that an enrolled student would complete his/her educational program at such other institution.

- Under the Operating Agreement, certain students in a teach-out school may have options that vary depending on their date of enrollment.

Page 2

- o Students who enrolled prior to June 23, 2014–the date the Department placed Corinthian on heightened financial oversight–will be able to either (1) continue and complete their educational program or (2) withdraw and obtain a full refund of all tuition and other fees paid for their program. Under the agreement, Corinthian will determine whether to provide these students the option of a full refund of tuition and charges paid or the ability to complete their education as originally intended. Students who complete their education under this option would not be eligible for a closed school loan discharge. Students who qualify for a Corinthian refund will have the refund applied to their Federal loan balances, and may qualify for a closed school loan discharge of the remaining amount owed, if any. Students will have an opportunity to appeal Corinthian's decision regarding the option they may pursue.

- o Students who enrolled on or after June 23, 2014, and before July 8, 2014, have the option to choose to (1) continue and complete their educational program or (2) withdraw and obtain a full refund of all tuition and other fees paid for their program. Under the Operating Agreement, Corinthian must provide these students the ability to choose whichever option benefits them the most. Further, under the agreement, students who fail to make a choice will be withdrawn from their program and provided a full refund. Students who complete their education would not qualify for a closed school loan discharge of their Federal loans. Students who qualify for a Corinthian refund will have the refund applied to their Federal loan balances, and may qualify for a closed school discharge of the remaining amount owed, if any.

- Under the Operating Agreement, Corinthian is also required to disclose to students enrolled at those institutions it plans to sell information regarding the status of the institutions and the options and protections afforded to those students. In addition to specific disclosures drafted for use for students at teach-out institutions discussed above, the Department has drafted disclosures for Corinthian to provide to prospective students enrolling in institutions identified as being for sale. The disclosures inform prospective students that certain Federal and State authorities are investigating the institution and that these investigations could result in future enforcement actions that might negatively affect students' ability to complete their educational programs. The disclosure further informs prospective students that if a school is sold, any new owner might make changes to their educational program, and that it is possible that any credits they earn at a Corinthian institution may not transfer to another school. Further, the Operating Agreement requires Corinthian to obtain signed acknowledgments from new students that they have received the disclosure prior to enrollment to ensure, to the best of the Department's ability, that students are fully aware of the pending sale of the school and what that could mean for their studies.

Please note that the Operating Agreement contemplates that the status of any particular Corinthian institution could change as a result of the Department's ongoing review of Corinthian's compliance with statutory and regulatory requirements. In January, the Department

denied Corinthian's request for approval to add certain new locations and programs at selected institutions because it had admitted to falsifying placement rates and/or grade and attendance records at various institutions and because of ongoing State and Federal investigations into serious allegations with respect to Corinthian's administration of the Federal Student Aid programs. Because these issues suggested systemic deficiencies in the operations of Corinthian as a parent corporation of its individual institutions, the Department instructed the company to provide certain required documentation and information with respect to placement rate percentages, and grade and attendance record changes at all Corinthian institutions. Corinthian's failure to substantially comply with our request is what led the Department to place it on a heightened level of Departmental financial oversight and precipitated the establishment of the Operating Agreement.

Under the Operating Agreement, if the Department finds, based on its reviews, that certain Corinthian institutions are ineligible for recertification to participate in Federal Student Aid programs, or are otherwise determined to be ineligible to participate, Corinthian is required to provide students their choice of whether to (1) continue and complete their educational program in accordance with regulations that govern school closures, as in the case that institutions are found to be ineligible, or (2) withdraw from school and receive a full refund of all tuition and other fees paid for their program. In addition, in these circumstances, students may be eligible for closed school loan discharges of any Federal student loans they took out for attendance at the formerly eligible institution. The conditions and qualifications pertaining to closed school discharges are different from those for the refund Corinthian is obligated to provide under the Operating Agreement; an affected student borrower may qualify for both, either, or neither.

You also asked how the Department will seek to ensure relief for Corinthian students with private student loan debt. In the Operating Agreement, we require Corinthian to include private student loans within the refunds that the company provides to students. In particular, we defined refunds in such cases to include repaying any private student loan or debt to any other lender from whom Corinthian received direct disbursements for such student's cost of attendance at Corinthian the amount of such disbursements, including reimbursing the student for any origination and other fees incurred by the student in obtaining a private student loan. Absent this explicit provision in the Operating Agreement, the HEA does not otherwise authorize the Department to seek such relief, and closed school loan discharges pertain only to Federal, not private, student loans. As to other relief that may be available for students who have obtained private loans, the terms of the loan agreement may permit the borrower to assert, as defenses to repayment, claims that the borrower has against the school. Borrowers should review their private loan agreements to determine whether they include a provision allowing such defenses.

The Operating Agreement makes no distinction between students enrolled in online-only programs and students who enroll in programs that require physical attendance.

In addition, you ask how the Department plans to ensure that students are properly notified of their options in cases of school closures and sales, and the consequences for students in cases of program changes by a new owner of a school consequent to a sale. A number of the disclosure requirements within the Operating Agreement are outlined above, and the Department is currently developing a more detailed plan to ensure it is prepared for both an entirely orderly

Page 4

closure and transition of all Corinthian's institutions, as well as a precipitous closure of all of its institutions, should either occur.

School closures and sales are not uncommon. However, the simultaneous closure and sale of as many institutions as comprise Corinthian, and that affect as large a student population, is without precedent. The Department is building upon and modifying existing plans for school closures and sales to bring them into line with the scale of Corinthian's operations. These plans include how the Department will coordinate with accrediting agencies and State authorizing agencies that, under the HEA, have principal roles and authorities in these cases. For example, the potential consequences and options for students as the result of any particular change in ownership will depend on, among other things, the interest and willingness of a buyer to accept and comply with any particular condition, the particular requirements or conditions that an accrediting agency may impose, and the conditions a State may require, given that the HEA does not generally preempt State law or override States' responsibilities for authorizing institutions that operate within their borders. As a result, the features and conditions of any particular sale, and the consequences and options for students, could vary on a case-by-case basis. In the end, however, the Department's concerns and interests are the concerns and interests of students and taxpayers, and the Department will strive to ensure their welfare in the subsequent closure and sale of Corinthian's institutions. To be clear, the Department will not approve a sale to another entity if that entity is currently under State and/or Federal investigation or is unable to meet the qualifications established under the HEA to qualify for Federal Student Aid.

With respect to your question about borrowers' right to present claims to the Department, the Department recognizes as a defense to repayment of Direct Loans a claim that the borrower has against the school that is based on the making of the loan or the provision of educational services, if State law recognizes such a claim and if the borrower proves the elements required to establish the claim.

A borrower or class of borrowers who obtain a judgment against a school upholding a claim can more readily establish that claim as a defense to repayment, but the borrower is not required to sue or obtain a judgment against the school in order to assert the claim against the school as a defense to repayment of a Direct Loan. Department regulations explicitly provide that a defaulted borrower may assert that the defaulted loan is not legally enforceable, but a borrower who is not in default can also assert a claim that the loan is not legally enforceable on the basis of a claim against the school. To do so, the borrower should present the claim to the servicer handling the Direct Loan for the Department.

Finally, as part of the Operating Agreement, the Department required that an independent monitor would be appointed to oversee Corinthian's actions. I am pleased to report that Skadden, Arps, Slate, Meagher & Flom LLP & Affiliates, under the leadership of former U.S. Attorney Patrick Fitzgerald, has been selected to take on this monitoring role. The Department is confident that Mr. Fitzgerald and his team will strengthen our efforts to oversee this process.

I appreciate your recommendations to the Department as we move forward in addressing issues arising from matters related to Corinthian's decision to wind down and cease operations. We continue to analyze how we can best protect students and taxpayers, and in so doing, will

continue to actively consider your recommendations. If you have additional questions, please have your staff contact Lloyd Horwich, Acting Assistant Secretary, Office of Legislation and Congressional Affairs, at (202) 401-0020.

Sincerely,

Arne Duncan