# Exhibit F

DATE: JUN 0 4 2015

TO: Sharon Mar
Office of Information and Regulatory Affairs
Office of Management and Budget

THROUGH: Kathy Axt
Privacy, Information Collection Clearance Division
U.S. Department of Education

FROM: James W. Runcie
Chief Operating Officer, Federal Student Aid

SUBJECT: Emergency Clearance of Information Collection to Allow for Receipt of Borrower Defense to Repayment Loan Discharge Claims

*Background on Borrower Defense to Repayment Loan Discharge Regulations*

Following a negotiated rulemaking process, the U.S. Department of Education (the "Department") published amendments to the Federal Direct Loan Program (Direct Loan) regulations on December 1, 1994. These regulations included borrower defenses specified in 34 CFR 685.206(c). The regulation, in part, states "(1) [i]n any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, an act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law."

A subsequent negotiated rulemaking process was established for the purpose of developing regulations for borrower defenses for both the Direct Loan and the Federal Family Education Loan Program (FFEL) programs. However, during the first session of the negotiations, the non-Federal negotiators recommended to the Department that no additional sessions were warranted and that no further regulatory provisions for borrower defenses would be needed. It was determined that borrower defenses could be adequately addressed by current regulation and administrative procedures. A further discussion of this is in the Federal Register, Vol. 60, No. 140, July 21, 1995, 37767-37770.

Prior to 2015, the borrower defense identified above was rarely asserted by any borrowers and no specific methods of collecting information regarding borrower defense claims have been defined or found necessary.



*Borrower Defense Claims from Corinthian Colleges, Inc. Borrowers*

Corinthian Colleges, Inc. (CCI) was the owner of a number of for-profit postsecondary education institutions across the country. In January 2010, CCI purchased Heald College, which had 14 locations in California, Oregon, and Hawaii. At the time of its purchase by CCI, Heald College participated in the federal student financial assistance programs authorized under Title IV of the Higher Education Act of 1965 (HEA), as amended. CCI was also the owner of other title IV eligible institutions, including the Everest and Wyotech chains of schools.

In January 2014, the Department sent a letter to CCI in which the Department requested that CCI provide a copy of school performance disclosure documents for every CCI location, including Heald College institutions, for the calendar years 2010, 2011, 2012, and, when available, 2013. The Department also asked that CCI provide the evidence upon which CCI relied to derive each of the placement rates cited in the disclosures, including a list of all students either placed or omitted from the placement calculation due to any type of waiver, and the academic, employment, and/or waiver information specified by the Department.

In June 2014 the Department placed CCI on an increased level of financial oversight after the company failed to address concerns about its practices, including concerns that it was falsifying job placement data used in marketing claims to prospective students and allegations of altered grades and attendance. CCI subsequently agreed to gradually wind down activity as part of an operating agreement with the Department. As a part of this, CCI sold 56 Everest and Wyotech campuses to the ECMC Group in November 2014. Over 70,000 students were enrolled in the programs that were transferred to ECMC.

In April 2015, the Department issued a notice of intent to fine Heald College $30 million upon finding that Heald misrepresented placement rates for a number of its programs going back to 2010. Upon the issuance of the Department's fine letter, CCI announced it would close its remaining programs immediately, including all its Heald locations and several Everest and Wyotech locations that were not part of the sale to the ECMC group. Almost 16,000 students were enrolled in these programs.

Over the past several months, as the events related to CCI have unfolded, former CCI students, supported by various organizations and non-profits, have organized a campaign to assert that the Department should discharge their student loan debt pursuant to the borrower defense regulations. Over 1,000 students have already submitted borrower defense claims to the Department. Several prominent Congressional offices have also voiced their support for this position. Many media outlets have also written about the CCI closure and the Department's findings of misrepresentation. While coverage has been mixed, most stories imply that the Department has not taken sufficient action to protect CCI students. Overall, pressure is mounting for the Department to act.

In the 20 years prior, the Department received 5 claims for borrower defense. Over the last several months, the Department has received over 1,000 such claims due to a building debt activism movement as well as the notoriety of Corinthian's collapse, creating a need for a clearer

process for potential claimants. This exponential increase in demand was unexpected and outside of the Department's control.

Given that borrowers have a right to assert a defense to repayment claim and that the Department has made findings against a number of CCI's former programs, we expect thousands of more claims to be submitted as several advocacy groups are working to organize CCI borrowers. Many of these borrowers are struggling or behind on their loan payments or in default. Because borrowers have a right to submit defense to repayment claims, the Department must set up a process to review and adjudicate them.

To respond to these events and protect harmed borrowers, which the Department has a legal responsibility to timely provide, the Department seeks to announce on June 8, 2015 that:

- Student borrowers who attended the Heald College programs that the Department has found made false representations will have their loans discharged if they complete the attached attestation. These borrowers need not prove that Heald College's actions violated State law as the Department's findings show a State law violation. The Department estimates that there are potentially 50,000 borrowers in this category.

- A process will be set up to review and adjudicate borrower defense claims from other borrowers, including other CCI borrowers. Although we will advise that borrowers hold their submissions until this process is made public, we cannot bar the submission of claims. Thus, the Department will post on its website the attached language directing those borrowers who choose not to wait to send their claims to the address provided and a short list of information they should include. The Department estimates that there are potentially 100,000 borrowers who may exercise this defense. It is important to note that borrowers from other schools could also submit borrower defense claims if they believe that their school has engaged in a State law violation related to their education that has harmed them.

- All former CCI borrowers who have filed, or plan to file, an application for borrower defense will have the opportunity to enter forbearance while they submit their applications and the Department reviews their claim.

The Department requests that OMB approve the attached Attestation and website language by June 4, 2015 and waive the requirement under §1320.5(a)(1)(iv) to publish notice of the Attestation in the Federal Register, as authorized under §1320.13(d). The Department anticipates announcing guidance on the borrower defense process on June 8, 2015. The closure of the Corinthian schools was unexpected and outside of the Department's control. To preserve borrowers' rights and meet its fiduciary responsibilities of the Direct Loan program, the Department is requesting an emergency approval for an information collection that will allow the Department to collect the information in the attestation for Heald College borrowers and the information needed for borrower defense claims from other borrowers. If the Department is unable to collect this information, borrowers will not be able to immediately take advantage of the relief being announced. This will raise questions from borrowers and our call centers risk becoming overwhelmed to the point of breaking. Without the attached Attestation, many

borrowers may submit incomplete or improperly prepared claims. All of this confusion may undermine our efforts to provide relief to harmed borrowers and result in a belief that there is no effective recourse available.

We believe that the facts described here meet the standards for emergency clearance in §1320.13(a)(2)(i) and (iii) because the inability to provide for public comment and notice regarding the Attestation would, if normal clearance procedures are followed, cause public harm to the borrowers who were enrolled in Heald Colleges. In addition, the use of normal clearance procedures would disrupt the Department's ability to protect the borrowers affected by closure of the Heald colleges and cause grievous harm to the integrity of the Federal Direct Loan program.

Thank you for your prompt consideration of this request. If you have additional questions, please contact Colleen McGinnis at Colleen.McGinnis@ed.gov or (202)377-4330.