UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TINA CARR and YVETTE COLON,<br><br>               Plaintiffs,<br><br>    v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the U.S. Department of Education; NAVIENT CORPORATION; NAVIENT SOLUTIONS LLC; NAVIENT CREDIT FINANCE CORPORATION; SALLIE MAE BANK; EDUCATIONAL CREDIT MANAGEMENT CORPORATION; JOHN DOE TRUST #1, f/k/a "Sallie Mae Education Trust"; JOHN DOE TRUST #2, a/k/a "Navient Federal Loan Trust"; JOHN DOE TRUST #3, a/k/a "Deutsche Bank ELT SLM Trusts"; JOHN DOE TRUST #4, a/k/a "Bank of New York ELT SLMA Trusts"; and JOHN DOE INC. a/k/a "Navient,"<br><br>               Defendants. | No. 17 Civ. 8790 (KPF) (KNF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT DEVOS'S MOTION TO DISMISS**

                                      GEOFFREY S. BERMAN
                                      United States Attorney
                                      Southern District of New York
                                      *Counsel for Defendant DeVos*
                                      86 Chambers Street, 3rd Floor
                                      New York, New York  10007
                                      Telephone:  (212) 637-2793
                                      Facsimile:  (212) 637-2717

*Of Counsel:*
MICHAEL J. BYARS
Assistant United States Attorney

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...................................................................................................................................1

I.   The Court Lacks Subject Matter Jurisdiction ........................................................................1

II.  Plaintiffs Fail to State a Claim ...............................................................................................5

III. Plaintiffs Have Not Exhausted Their Administrative Remedies ..........................................9

CONCLUSION...............................................................................................................................11

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                    <u>Page</u>

*Bank of America NT & SA v. Riley*,
    940 F. Supp. 348 (D.D.C. 1996) ...............................................................................................4

*Bartels v. Riley*,
    No. 98-8885 (11th Cir. June 29, 1999) ......................................................................................5

*Block v. North Dakota*,
    461 U.S. 273 (1983) ..................................................................................................................2

*Burgess v. U.S. Dep't of Educ.*,
    No. 05 Civ. 98, 2006 WL 1047064 (D. Vt. Apr. 17, 2006) ......................................................5

*Calise Beauty Sch., Inc. v. Riley*,
    941 F. Supp. 425 (S.D.N.Y. 1996) ....................................................................................... 3-4

*Calise Beauty Sch., Inc. v. Riley*,
    No. 96 Civ. 6501 (SHS), 1997 WL 630115 (S.D.N.Y. Oct. 9, 1997) .....................................4

*Chevron Corp. v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012) ......................................................................................................6

*De La Mota v. United States Dep't of Educ.*,
    No. 02 Civ. 4276 (LAP), 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003) ..........................3

*De La Mota v. United States Dep't of Educ.*,
    412 F.3d 71 (2d Cir. 2005) ........................................................................................................3

*DiNello v. United States Dep't of Educ.*,
    No. 06 Civ. 2763, 2006 WL3783010 (N.D. Ill. Dec. 21, 2006) ..........................................4

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ..................................................................................................................2

*FHA v. Burr*,
    309 U.S 242 (1940) ...................................................................................................................2

*Hill Dermaceuticals, Inc. v. FDA*,
    709 F.3d 44 (D.C. Cir. 2013) ....................................................................................................3

*In re Prudential Lines Inc.*,
    158 F.3d 65, 70 (2d Cir. 1998) ..................................................................................................7

*Krebs v. Charlotte Sch. of Law, LLC*,
    No. 17 Civ. 190 (GCM), 2017 WL 3880667 (W.D.N.C. Sep. 5, 2017) ............................10

*OneSimpleLoan v. United States Sec'y of Educ.*,
    No. 06 Civ. 2979 (RMB), 2006 WL 1596768 (S.D.N.Y. June 9, 2006) ............................4

*Perkins v. U.S. Dep't of Educ.*,
    No. 01 Civ. 867, 2002 WL 31370473 (S.D. Ohio. Sept. 30, 2002) ...................................5

*Pro Schools, Inc. v. Riley*,
    824 F. Supp. 1314 (E.D. Wis. 1993) ...............................................................................4

*Ray Legal Consulting Group v. Gray*,
    37 F. Supp. 3d 689, 700 (S.D.N.Y. 2014) .......................................................................6

*Rice v. U.S. Dep't of Educ.*,
    No. 08 Civ. 127, 2008 WL 2872202 (W.D. Mo. July 22, 2008) .....................................4

*Student Loan Mktg. Ass'n v. Riley*,
    907 F. Supp. 464 (D.D.C. 1995) .....................................................................................4

*Thomas v. Bennett*,
    856 F.2d 1165 (8th Cir. 1988) .........................................................................................5

*Ulstein Mar. Ltd. v. United States*,
    833 F.2d 1052 (1st Cir. 1987) .........................................................................................2

*USPS v. Flamingo Indus. (USA) Ltd.*,
    540 U.S. 736 (2004) ........................................................................................................2

Statutes, Legislative History, and Administrative Sources
Higher Education Act of 1965, Pub. L. 89-329 (Nov. 8, 1965) ............................................ *passim*

12 U.S.C. § 1702 ......................................................................................................................2

12 U.S.C. § 1725(c)(4) .............................................................................................................2

20 U.S.C. § 1082(a)(2) .................................................................................................. *passim*

39 U.S.C. § 401 ........................................................................................................................2

Regulations and Federal Register Notices
34 C.F.R. § 685.206(c) ......................................................................................................6, 8, 9

34 C.F.R. § 682.209(g) ............................................................................................................6

Notices, 60 Fed. Reg. 37,768 (July 21, 1995) ......................................................................8, 9

Student Assistance General Provisions, 81 Fed. Reg. 75,926 (Nov. 1, 2016) .........................8

Student Assistance General Provisions, 82 Fed. Reg. 27,621 (June 16, 2017) .......................9

<u>Administrative Sources</u>

Federal Student Aid, *Borrowers May Be Eligible for Forgiveness of the Federal Student Loans Used to Attend a School if That School Misled Them or Engaged in Other Misconduct in Violation of Certain Laws* ..........................................7, 9

U.S. Department of Education, *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015)................................................................................................................6

U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017)..................................................7

Defendant Betsy DeVos, Secretary of the United States Department of Education,[1] by her attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of her motion to dismiss.

**ARGUMENT**

**I.     THE COURT LACKS SUBJECT MATTER JURISDICTION**

In its Opening Brief, the Department established that section 1082(a)(2) does not waive its sovereign immunity here because this action falls within the section's exemption clause, which provides that "no injunction . . . or other similar process . . . shall be issued against the Secretary."  20 U.S.C. § 1082(a)(2).  The Government explained that courts have held this preclusive language to apply whenever the relief sought was "anticipatory" in nature or would effectively result in a complete bar to loan collection.  *See* Br. 9-15.  The Government further showed that plaintiffs' requests for relief would ban any future collection of their loans by the Department and that this was the equivalent of injunctive relief for purposes of section 1082(a)(2).  *See id.* 15-16.

Plaintiffs first argue that "sue-and-be-sued waivers are to be liberally construed," and that courts "should not ordinarily infer any exceptions not expressly enumerated by Congress." Memorandum of Law in Opposition to Defendant DeVos's Motion to Dismiss (the "Opposition" or "Opp.") 13 (internal quotation marks and alterations omitted).  The cases discussed by plaintiffs, *see id.*, all involve broad sovereign immunity waivers, without any limiting language such as the "no . . . injunction . . . or similar process" clause at issue here.  *See FDIC v. Meyer*, 510 U.S. 471, 480 (1994) ("FSLIC 'shall have power . . . [t]o sue and be sued, complain and defend, in any court of competent jurisdiction in the United States[.]'" (quoting 12 U.S.C.

---

[1] Capitalized terms bear the same meanings ascribed to them in the Memorandum of Law in Support of Defendant DeVos's Motion to Dismiss (the "Opening Brief" or "Br.").  ECF No. 60.

§ 1725(c)(4) (repealed 1989))); *USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004) ("The [Postal Reorganization Act of 1970] waives the immunity of the Postal Service from suit by giving it the power 'to sue and be sued in its official name.'" (quoting 39 U.S.C. § 401)); *FHA v. Burr*, 309 U.S 242, 244 (1940) ("'The Administrator shall . . . be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.'" (quoting 12 U.S.C. § 1702)). The relevant principle for this case is thus that any conditions in a provision waiving sovereign immunity "must be strictly observed." *Block v. N. Dakota*, 461 U.S. 273, 287 (1983) ("[C]onditions to legislation waiving the sovereign immunity of the United States . . . must be strictly observed, and exceptions thereto are not to be lightly implied.").

While plaintiffs note that "'declaratory relief . . . is *not* synonymous with an injunction,'" Opp. 13 (quoting *Ulstein Mar. Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987)), no one is suggesting that these two types of relief are indistinguishable generally. Instead, the Government has argued that courts must examine the specific relief requested in each case to determine whether it is sufficiently injunctive in nature to fall within the exception to waiver in section 1082(a)(2). *See* Br. 10-11; *Ulstein*, 833 F.2d at 1055 (recognizing that "[c]ourts have on occasion refused to grant declaratory relief in cases where the effect would be identical to a legally impermissible injunction").

Plaintiffs, however, offer no convincing practical basis for distinguishing the declaratory relief they seek from an injunction: they seek a ruling that would permit them to "assert a complete bar to [any] suit" by the Department to collect their loans. Opp. 14. In support of their argument, plaintiffs identify cases where courts have "issued declarations regarding the underlying validity of borrowers' obligations on their loans [that] are not limited to a particular method of collection." Opp. 18. But these were cases seeking declaratory relief under the APA,

- 2 -

which is inherently retrospective, and are thus not relevant to the prospective relief plaintiffs seek here.

Under the APA, a district court generally reviews a final agency action, *i.e.*, one that has already been made, to determine whether it should either be upheld or remanded to the agency to correct it.[2]  *See, e.g.*, *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013). Such a request for declaratory relief under the APA would not fall within section 1082(a)(2)'s prohibition, as many of plaintiffs' cited cases reflect.  *See, e.g.*, *De La Mota v. U.S. Dep't of Educ.*, No. 02 Civ. 4276 (LAP), 2003 WL 21919774, at *4-*5, *9 (Aug. 12, 2003) (holding that the court lacked subject matter jurisdiction over plaintiffs' claims for injunctive and monetary relief, but that declaratory relief could be obtained under the APA), *aff'd*, 412 F.3d 71 (2d Cir. 2005); *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 430 (S.D.N.Y. 1996) ("Plaintiffs have not been left procedurally helpless by the preclusion of injunctive relief [pursuant to section 1082(a)(2)]" because, "[i]n addition to pursuing administrative appeals, they may litigate final decisions by the Secretary under the [APA], pursuant to which they may be entitled to declaratory relief."); *Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 474 (D.D.C. 1995) ("[C]ourts have held that the anti-injunction clause of § 1082(a)(2) does not preclude relief for APA claims."), *aff'd*, 104 F.3d 397 (D.C. Cir. 1997); *see also OneSimpleLoan v. U.S. Sec'y of Educ.*, No. 06 Civ. 2979 (RMB), 2006 WL 1596768, at *6 (S.D.N.Y. June 9, 2006) (analyzing plaintiff's identical claims under the APA and the Declaratory Judgment Act together and

---

[2] Plaintiffs have not brought a claim under the APA, 5 U.S.C. § 702, nor could they, as the Department has not made a determination with regard to their pending borrower defense applications and thus there is no "final agency action" for this Court to review.  *See, e.g.*, *Calise Beauty Sch., Inc. v. Riley*, No. 96 Civ. 6501 (SHS), 1997 WL 630115, at *7 (S.D.N.Y. Oct. 9, 1997).  The APA also permits a court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but plaintiffs have not asserted that type of APA claim here either.

explaining that section 1082(a)(2) "does not necessarily bar declaratory relief"), *aff'd*, 496 F.3d 197 (2d Cir. 2007).[3]

But this does not mean that a plaintiff may seek relief under the HEA that (although denominated as declaratory) is prospective and thus injunctive in nature, such as plaintiffs' request for "declaratory" relief that would allow them "to assert a complete bar" to future Department collection actions. Opp. 14. Instead, courts must carefully examine any request for declaratory relief under the HEA to determine whether it is sufficiently injunctive in nature to fall within section 1082(a)(2)'s injunction exemption. *See* Br. 11-16. Specifically, the Eleventh and Eighth Circuits have permitted HEA declaratory relief claims where the relief requested did not foreclose all avenues for the Department to collect on the loans at issue. *See Bartels v. Riley*, No. 98-8885, slip op. at 11 (11th Cir. June 29, 1999) (unpublished) (ECF No. 62-1) (holding that claim for declaratory relief was not barred, because it "would not prevent the Secretary from collecting on loans altogether," and thus did "not amount to the equivalent of injunctive relief"); *Thomas v. Bennett*, 856 F.2d 1165, 1169 (8th Cir. 1988). These cases stand for the proposition that a plaintiff may not seek declaratory relief that would preclude all collection of her student loans, which is precisely what plaintiffs are seeking here. *See* Opp. 14.[4] While plaintiffs do not

---

[3] *See also Bank of Am. NT & SA v. Riley*, 940 F. Supp. 348, 350, 353 (D.D.C. 1996) (review of final decision denying application for special allowance), *aff'd*, 132 F.3d 1480 (D.C. Cir. 1997); *Student Loan Mktg. Ass'n*, 907 F. Supp. at 474 (D.D.C. 1995) (noting that "plaintiff's challenge . . . is brought under the APA"); *Pro Schools, Inc. v. Riley*, 824 F. Supp. 1314, 1319 (E.D. Wis. 1993) (plaintiff sued after the Department issued a "final decision" that it was ineligible to participate in the FFEL program and had rejected its administrative appeal). To the extent that *DiNello v. U.S. Department of Education* suggests that the decisions cited above permit declaratory relief that would prohibit all loan collection, *see* No. 06 Civ. 2763, 2006 WL 3783010, at *4 (N.D. Ill. Dec. 21, 2006) , that is incorrect.

[4] Plaintiffs' assertion that "courts across the country have exercised jurisdiction over similar declaratory judgment actions by federal student loan borrowers," Opp. 15-16, is unpersuasive. *Rice v. U.S. Department of Education* concerned the interpretation of a past settlement agreement

deny that courts have considered whether the relief sought is "anticipatory" or prospective in nature in this regard, they erroneously argue that they are seeking merely a "declaration of their present rights." Opp. 17.  This is of no help to plaintiffs: the dispositive question is whether the relief requested is focused on its prospective effect.  *See* Br. 12-13.  Plaintiffs confirm that they are seeking impermissibly forward-looking relief when they state that "this action seeks an advance adjudication of precisely such a collection proceeding," Opp. 19, *i.e.*, a future collection lawsuit by the Department.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM

Even if this Court had subject matter jurisdiction to hear plaintiffs' claims, it should dismiss this action because plaintiffs have failed to state a claim.  As the Department has previously explained, there is no basis for plaintiffs' claims in the language of their respective contracts or the applicable regulations.  *See* Br. 16-19.

With respect to Ms. Carr's claim, the language in her Direct Loan Master Promissory Note and 34 C.F.R. § 685.206(c) unequivocally permits her to assert a borrower defense only in a collection proceeding—which this action is not.  *See* Br. 17.  As for Ms. Colon's claim in Count Two, the relevant language in her FFEL Master Promissory Note[5] and 34 C.F.R.

---

and thus is consistent with the Department's interpretation of section 1082(a)(2).  *See* No. 08 Civ. 127, 2008 WL 2872202, at *1 (W.D. Mo. July 22, 2008).  *Perkins v. U.S. Department of Education* appears to be incorrectly decided and inapposite; there, the district court appears to have allowed a *pro se* plaintiff to collaterally attack a state court judgment that found him liable for education loans.  No. 01 Civ. 867, 2002 WL 31370473, at *4 (S.D. Ohio. Sept. 30, 2002).  Plaintiffs also rely on an opinion that does not present the issue of whether section 1082(a)(2) applies to requests for declaratory relief that are of an injunctive nature.  *See Burgess v. U.S. Dep't of Educ.*, No. 05 Civ. 98, 2006 WL 1047064 (D. Vt. Apr. 17, 2006).

[5] After the Department filed its Opening Brief, it became apparent that the relevant language in Ms. Colon's Master Promissory Note differed slightly from that alleged in the complaint.  *Compare* Opp. 6 & n.1; Ranucci Decl. Ex. A ("any lender holding such loan"), *with* Am. Compl. ¶ 173 ("any holder of this Note").  This difference is not, however, material to the analysis

§ 682.209(g) permits her to assert the relevant claims and defenses only against the holder of the loan—which the Department is not. *See* Br. 18-19.

Plaintiffs argue that the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, provides a work-around for their lack of contractual or regulatory basis for a cause of action, *see* Opp. 18, but that statute "is procedural only . . . and does not create an independent cause of action," *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). While plaintiffs claim the DJA authorizes them to bring any case that presents an "'immedia[te]' controversy" in order to "obtain an advance adjudication of the Department's cause of action," Opp. 18 (quoting *Ray Legal Consulting Group v. Gray*, 37 F. Supp. 3d 689, 700 (S.D.N.Y. 2014)), that is incorrect. The quoted language from *Ray Legal Consulting* pertains to the Article III ripeness requirement, not the scope of the DJA. *See Ray Legal Consulting*, 37 F. Supp. 3d at 700 (S.D.N.Y. 2014) ("A declaratory judgment action is ripe for adjudication if the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (internal quotation marks omitted)). The absence of a cause of action is therefore fatal to plaintiffs' claims.

Even if the quoted language from *Ray Legal Consulting* were the applicable standard for bringing a DJA action, the facts and circumstances of this case are hardly "of sufficient immediacy and reality to warrant" declaratory relief. Far from threatening to sue plaintiffs, the Department has "placed Ms. Carr's loans in a 'stopped collection' status." Am. Compl. ¶ 185.

---

herein, as both versions of this clause limit the borrower to asserting claims and defenses only against a person or entity holding the loan.

And Ms. Colon's FFELs are in forbearance. *Id.* ¶ 188.[6]  Moreover, the Department has made clear that plaintiffs will not be required to pay more than one year's worth of interest after their borrower-defense applications were filed, even if they do not ultimately receive a full discharge of their loans.[7]  Plaintiffs' Sword of Damocles theory is thus unavailing. *See* Opp. 14, 18.  There is no current threat, let alone a threat of "sufficient immediacy and reality," that the Department will file a collection action against plaintiffs.

Nor is this a situation where the Department is seeking a litigation advantage by delaying its filing of collection actions; instead, it is not collecting on plaintiffs' loans while it is adjudicating their (and others') borrower defense applications.  Thus, to the extent that the "intent" of the DJA has been described as "to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them," Opp. 12, that purpose would not be served by declaratory relief here, since the Department is not arbitrarily abstaining from enforcement of the loans, but rather considering the loans' validity in advance of any further steps.

Plaintiffs incorrectly argue that a letter from former Secretary Duncan and a 2016 notice in the *Federal Register* convert Ms. Carr's borrower-defense rights under her Note and section

---

[6] *See* Federal Student Aid, *Borrowers May Be Eligible for Forgiveness of the Federal Student Loans Used to Attend a School if That School Misled Them or Engaged in Other Misconduct in Violation of Certain Laws* ("[S]hortly after we receive your application, your loans will be placed in forbearance, and collections will cease on any of your loans that are in default while your application is evaluated.") ("*Borrowers May Be Eligible for Forgiveness*"), *available at* https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/borrower-defense#forbearance-stopped-collections-status.

[7] *See* U.S. Dep't of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017) ("[T]o mitigate the inconvenience for how long it has taken to adjudicate claims, the Department will apply a credit to interest that accrues on loans starting one year after the borrower defense application is filed."), *available at* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.

685.206(c) into an affirmative cause of action.  *See* Opp. 20.  Secretary Duncan's statement that "a borrower who is not in default can also assert a claim that the loan is not legally enforceable on the basis of a claim against the school" refers to the Department's administrative adjudication process and not to any independent cause of action (which could not be created by regulation in any event), as the sentence following that quotation makes clear:  "To do so, the borrower should present the claim to the servicer handling the Direct Loan for the Department."  Ranucci Decl. Ex. E at 4.  The letter does not say that the borrower can bring a lawsuit.

Nor does plaintiffs' quoted language from the *Federal Register* notice provide a Direct Loan borrower with an affirmative cause of action.  Plaintiffs omit key language from the notice which makes clear that section 685.206(c) was meant to provide borrowers with only a defense to repayment regardless whether they borrowed Direct Loans or FFELs:

> As explained by the Department in 1995, 60 FR 37769-37770, the Direct Loan borrower defense regulations were intended to *continue the same treatment for borrowers* and the same potential liability for institutions *that existed in the FFEL Program*—which allowed borrowers to assert both claims and defenses to repayment, without regard as to whether such claims or defenses could only be brought in the context of debt collection proceedings. . . .

Student Assistance General Provisions, 81 Fed. Reg. 75,926, 75,956 (Nov. 1, 2016) (emphases added).[8]  A review of the 1995 *Federal Register* notice cited above confirms that borrowers may assert the relevant defense in collection proceedings, regardless of whether they had Direct Loans or FFELs.  *See* Notices, 60 Fed. Reg. 37,768, 37,770 (July 21, 1995).  The final clause above characterizes the FFEL regulation and does not provide Direct Loan borrowers with an independent cause of action (which is not, in any event, in the Direct Loan agreement or regulation).

---

[8] The Department has postponed the effectiveness of the revised version of section 685.206(c). *See* Student Assistance General Provisions, 82 Fed. Reg. 27,621, 27,622 (June 16, 2017).

Ms. Colon similarly has failed to identify any contractual or regulatory language providing her with a cause of action against any entity other than the "holder" of her FFELs.  *See* Opp. 20-21.  Instead, she baselessly urges this Court to disregard the plain language of her note and the regulation, as a matter of her view of "sound policy," because of the Department's supposed "complete" or "total" control over FFELs and status as the "final insurer" of FFELs.  *Id.*  Moreover, Ms. Colon's recitation of the numerous steps that would have to occur before the Department "eventually" became the holder of her FFELs merely reinforces that none of these steps has occurred (and thus that Ms. Colon's theory raises serious ripeness concerns).  *See* Opp. 21.  Plaintiffs' unpleaded assertion that there may be additional contracts or documents that would allow the Department to be considered the "holder" of Ms. Colon's loans under an agency theory is pure speculation and does not merit discovery.  *See* Opp. 21-22.

Finally, Ms. Colon's suggestion that the Department's consideration of her borrower-defense application makes it a proper party to her claim, *see* Opp. 19, is based on a misunderstanding.  The Department took Ms. Colon's application on the assumption that, if the application were to be approved, she would then consolidate her FFELs into Direct Consolidation loans, which would allow the Department to discharge them:

> For the purposes of borrower defense discharge only, we interpret the term "Direct Loan" in 34 CFR 685.206(c) to include Direct Consolidation loans.  This interpretation enables borrowers with loans eligible for Direct Loan consolidation, including [FFELs] . . . , to avail themselves of the borrower discharge process provided here by consolidating such loans into the Direct Loan Program.

Federal Student Aid, *Borrowers May Be Eligible for Forgiveness*, *supra*.

### III. PLAINTIFFS HAVE NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

In its Opening Brief, the Department explained why, even if sovereign immunity had been waived and plaintiffs had a cognizable cause of action, a judicially imposed exhaustion

requirement would be appropriate here, because of the strong institutional interests in allowing the Department to complete its adjudications of plaintiffs' borrower-defense applications before any litigation. *See* Br. 19-21. Plaintiffs' claim that the Department often decides such applications without an individualized record is incorrect and not supported by the report they cite. *See* Opp. 24 (citing *Third Report of the Special Master for Borrower Defense to the Under Secretary*).

Plaintiffs argue that the ongoing harm they are suffering as the result of adverse credit reporting and accrual of interest requires immediate judicial review without pursuing administrative remedies. *See* Opp. 22. However, because the filing of a borrower-defense application puts a non-defaulted loan into forbearance, Ms. Carr's credit report simply reflects that she did not seek any relief (*e.g.*, requesting forbearance, deferment, or an income-sensitive repayment plan) before she defaulted on her loan. In addition, as noted above, the Department will credit borrowers with any interest that accrues on their loans after a borrower-defense application has been pending for one year.

Finally, plaintiffs argue that administrative exhaustion should not be required because the Department's adjudication of borrower-defense applications may be delayed because it must interpret the laws of numerous states. *See* Opp. 23. Even if this were true, this argument would not justify permitting plaintiffs to opt out of the administrative process that they voluntarily commenced simply because they believe that a judicial resolution of their applications might be faster: "Mere complaints about having to wait for a decision from the DOE are insufficient to waive the exhaustion requirement." *Krebs v. Charlotte Sch. of Law, LLC*, No. 17 Civ. 190 (GCM), 2017 WL 3880667, at *12 (W.D.N.C. Sep. 5, 2017).

**CONCLUSION**

For the reasons set forth above, the Court should dismiss the amended complaint.

Dated: New York, New York
May 24, 2018

                                          Respectfully submitted,

                                          GEOFFREY S. BERMAN
                                          United States Attorney

                              By:  *s/ Michael J. Byars*
                                          MICHAEL J. BYARS
                                          Assistant United States Attorney
                                          86 Chambers Street, 3rd Floor
                                          New York, New York  10007
                                          Telephone:  (212) 637-2793
                                          Facsimile:  (212) 637-2717
                                          E-mail:  michael.byars@usdoj.gov