UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TINA CARR and YVETTE COLON,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　　　-v.-<br><br>ELIZABETH DEVOS, *in her official capacity as* SECRETARY OF THE U.S. DEPARTMENT EDUCATION, NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION, and JOHN DOE TRUSTS 1-4,<br><br>　　　　　　　　Defendants. | 17 Civ. 8790 (KPF)<br><br>**<u>OPINION AND ORDER</u>** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Tina Carr and Yvette Colon (together, "Plaintiffs") took out significant student loans in order to attend the Sanford-Brown Institute ("SBI"), a for-profit educational institution that, it is alleged, misrepresented the job opportunities that SBI students could achieve. After completing their respective courses of study, each Plaintiff found her SBI education to be effectively worthless. In consequence, each Plaintiff sought to invoke the "borrower defense," pursuant to which students who rely on the misrepresentations of an educational institution with respect to its accreditation or graduate employment rates may be relieved of their debts or have a defense to any collection attempts. The United States Department of Education ("DOE" or the "Department") has recognized the borrower defense in certain circumstances; Plaintiffs applied to DOE for such relief in late 2015, but DOE has not yet resolved their applications.

Plaintiffs now ask this Court for the resolution they have not yet obtained from DOE: They seek a declaratory judgment that they are entitled to a borrower defense for their outstanding student loans. DOE objects on the grounds that (i) the Secretary of Education is immune from suit; (ii) the specific loans that Plaintiffs received do not trigger a private right of action against the Secretary; and (iii) administrative remedies have not been exhausted. The Court agrees that the Secretary is immune from suit, thereby depriving the Court of subject matter jurisdiction. Even if the Court had subject matter jurisdiction, Plaintiffs have not adequately stated a claim for relief against the Secretary. The Court declines to reach the issue of exhaustion, as it does not consider it appropriate to undertake this unbounded inquiry in an advisory capacity. While the Court sympathizes with Plaintiffs' frustration over the lengthy delays in the processing of their applications, it cannot find that this bureaucratic lag gives rise to a viable claim for relief at this stage.

## BACKGROUND[1]

### A.   Factual Background

Ms. Carr lives in Lindenhurst, New York, and took out federal student loans to attend a Medical Assisting program at SBI. (Am. Compl. ¶ 10). Ms.

---

[1]   The facts in this section are drawn principally from the allegations in the Amended Complaint ("Am. Compl." (Dkt. #35)). The Court also relies on the exhibits provided in the Declaration of Assistant United States Attorney Michael J. Byars in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Byars Decl." (Dkt. #61)), and the Declaration of Jessica Ranucci in Opposition to the Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim ("Ranucci Decl." (Dkt. #71)).

Defendants Navient Corporation, Navient Solutions, LLC, and Navient Credit Finance Corporation filed answers to the Amended Complaint on April 13, 2018. (Dkt. #64-66). Accordingly, references in this Opinion to "Defendant" refer only to Defendant DeVos.

Colon lives in New York City, and took out federal and private student loans to attend to a Non-Invasive Cardiovascular Technology (Sonography) program at SBI. (*Id.* at ¶ 11). Defendant Elizabeth DeVos (the "Secretary") is the United States Secretary of Education. (*Id.* at ¶ 12). In her capacity as Secretary, she oversees DOE and its federal student loan programs. (*Id.* at ¶ 13).

### 1. The Loans and the SBI Investigation

According to Ms. Colon, she decided in 2006 to further her career in medicine by becoming a cardiac sonographer, and listened to SBI representatives who promised her that attendance at the school would produce this result. (Am. Compl. ¶¶ 120-25). Relying on these promises, Ms. Colon enrolled at SBI; to finance her attendance, she took out four Federal Family Education Loan ("FFEL") program loans, totaling $14,838, and two private loans, totaling $21,095. (*Id.* at ¶¶ 126, 128-30, 137-39).[2] Upon her graduation, Ms. Colon found that the SBI sonography program's lack of accreditation prevented her from obtaining work as a sonographer, and other sonography programs would not accept her credits for transfer due to the same accreditation issues. (Am. Compl. ¶¶ 132-38). Ms. Colon's private loans have gone into default, and her credit rating has suffered. (*Id.* at ¶¶ 149-51).

---

For ease of reference, the Court refers to the Defendant's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #60); to Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #70); and to Defendant's Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #80).

[2] The FFEL program allows participating private lenders to make loans with their private funds, which "loans are then insured by guaranty agencies (state or private non-profit organizations), and reinsured by [DOE]." (Def. Br. 3).

Ms. Carr provides a similar narrative.  In 2011, she was persuaded to apply for SBI's medical assisting program to further her ambition of working as a registered nurse.  (Am. Compl. ¶¶ 87-100).  Based on purportedly false representations from SBI representatives, Ms. Carr enrolled in the program and borrowed $14,576 in six federal direct student loans in order to finance her attendance.  (*Id.* at ¶¶ 101-12).  She was unable to find work in medicine after her graduation, and her federal loans are in default.  (*Id.* at ¶¶ 113-18).  She has also suffered adverse credit consequences.  (*Id.* at ¶ 119).

Plaintiffs are not the only victims of SBI's practices.  The New York State Office of the Attorney General ("OAG") found that SBI had made deceptive promises to many students in violation of New York General Business Law Sections 349 and 350.  (Am. Compl. ¶¶ 152-66).  OAG's investigation resulted in an assurance of discontinuance and the establishment of a restitution fund of over $9 million from SBI's parent company.  (*Id.*).

## 2.    **Plaintiffs' Borrower Defense Applications**

On March 18, 2015, Ms. Carr filed a letter with DOE, asserting that she had a complete defense to the repayment of her federal loans due to SBI's misrepresentations.  (Am. Compl. ¶ 183).  On March 9, 2015, Ms. Colon submitted a similar letter to DOE's ombudsman.  (*Id.* at ¶ 185).  On April 10, 2015, DOE informed Ms. Carr that a school's misrepresentations were not a legal basis for debt relief, but thereafter DOE placed her loans in "stopped

collection" status.  (*Id.* at ¶¶ 184-85).[3]  Ms. Colon's FFEL loans have been

placed in forbearance by the private loan holder, Navient Solutions LLC.  (*Id.* at

¶¶ 59-60, 188).

## B.    Regulatory Background

Both sides agree that since 1994, both FFEL and direct loans have had

language providing that students may assert a school's violations of state law

as a defense to requests for repayment of the loans.  (*See* Def Br. 3-6; Pl.

Opp. 6-7).  The Department promulgated a regulation in 1994 with respect to

direct loans, which regulation provides that: "In any proceeding to collect on a

Direct Loan, the borrower may assert as a defense against repayment, any act

or omission of the school attended by the student that would give rise to a

cause of action against the school under applicable State law."  34 C.F.R.

§ 685.206(c)(1).  Ms. Colon's FFEL loan incorporates a Master Promissory Note

("MPN") with similar language:

> [I]f the proceeds of a particular loan made under this
> MPN are used to pay tuition and charges of a for profit
> school that refers loan applicants to the lender or that
> is affiliated with the lender by common control, contract
> or business arrangement, any lender holding such loan
> is subject to all claims and defenses that I could assert
> against the school.

(Ranucci Decl., Ex. A (Colon Master Promissory Note (redacted))).

---

[3]    While the Department does not address the April 10, 2015 letter in its briefing, it
acknowledges throughout its submissions that a school's misrepresentations regarding
graduate placement and accreditation can serve as a complete defense to repayment.
(*See, e.g.*, Def. Br. 3-6).

In June 2015, DOE experienced a surge in borrower defense applications in the aftermath of the collapse of Corinthian Colleges, a for-profit secondary education company that had filed for Chapter 11 bankruptcy one month earlier. (Def Br. 6-7; Pl. Opp. 7-9). By December 20, 2017, DOE had processed thousands of claims for relief, primarily from Corinthian students, but thousands of applications remained outstanding. (*Id.*). At the time the Department filed its motion to dismiss, Plaintiffs' applications for debt relief remained pending with DOE. (Def. Br. 2).

## C.    **Procedural Background**

On September 20, 2017, Plaintiffs filed this suit against the Secretary and Navient Corporation seeking a declaratory judgment against both parties that Ms. Carr's direct loans and Ms. Colon's FFEL and private loans were unenforceable. (Dkt. #2). On February 14, 2018, this Court held a pre-motion conference to address Defendants' anticipated motions to dismiss. In response, on March 2, 2018, Plaintiffs filed the Amended Complaint naming additional defendants and refining their claims against each. (Dkt. #34).

On April 6, 2018, the Secretary moved to dismiss all of Plaintiffs' claims against her pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. #59-60). On May 7, 2018, Plaintiffs filed their opposition. (Dkt. #70). On May 21, 2018, Ms. Colon and the private loan holders agreed to arbitrate her claims regarding her private loans. (Dkt. #79). On May 24, 2018, the Secretary filed her reply to Plaintiffs' opposition. (Dkt. #80). The motion is fully briefed and ripe for review.

**DISCUSSION**

**A.    Plaintiffs' Claims Are Barred by Sovereign Immunity**

      **1.    Applicable Law**

          **a.    Motions to Dismiss Under Rule 12(b)(1)**

Defendant argues first that this Court lacks jurisdiction to consider Plaintiffs' claims against her due to sovereign immunity.  Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

          **b.    The Higher Education Act's Waiver of Sovereign Immunity**

Where, as here, an officer of the United States is named as a defendant in her official capacity, the doctrine of sovereign immunity may present a jurisdictional bar to suit.  *See FDIC* v. *Meyer*, 510 U.S. 471, 475 (1994).  "The

7

basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block* v. *North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287 (1983). And "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction[.]" *Presidential Gardens Assocs.* v. *U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (citing *United States* v. *Mitchell*, 463 U.S. 206, 212 (1983)). The United States, through the Higher Education Act of 1965 ("HEA"), Pub. L. 89-329, 79 Stat. 1219, has provided a limited waiver of sovereign immunity. 20 U.S.C. § 1082(a)(2). As potentially relevant to the following discussion, however, the HEA's waiver of sovereign immunity specifically does not cover claims for "attachment, injunction, garnishment, or other similar process[.]" *Id.*

### 2.    Analysis

The Court begins by addressing the above-described carve-out to the HEA immunity waiver — a carve-out that Defendant claims is dispositive of the claims against her. (*See* Def. Br. 9-10). "When Congress attaches conditions, such as a statute of limitations, to legislation waiving the United States' sovereign immunity, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block*, 461 U.S. at 287. Plaintiffs offer a different standard, citing cases in which "sue and be sued" clauses were construed broadly to give effect to the expressed intent of Congress. (Pl. Opp. 23 (citing *Meyer*, 510 U.S. at 480; *U.S. Postal Serv.* v. *Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741-42 (2004); *Fed. Hous. Admin.* v. *Burr*, 309 U.S.

242, 245 (1940))).  A review of these cases, however, demonstrates that Plaintiffs ascribe undue significance to them.  While the cases articulate a general principle that waivers must be liberally construed, they do not contravene the "general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign."  *Meyer*, 510 U.S. at 480.  Taking these somewhat contradictory principles together, the Court identifies the relevant question as whether allowing Plaintiffs' suit would be clearly inconsistent with the HEA statutory scheme.  *See Burr*, 309 U.S. at 245.

The Court concludes that the limited waiver of sovereign immunity does not allow declaratory relief that functions as injunctive relief by another name.  In so doing, it agrees with the conclusion advanced by DOE, but not the entirety of DOE's supporting arguments.  Here, DOE relies heavily on a decision from the United States Court of Appeals for the Ninth Circuit that held that a request for declaratory relief "was foreclosed where it would have the same coercive effect as an injunction."  *Am. Ass'n of Cosmetology Sch.* v. *Riley*, 170 F.3d 1250, 1255 (9th Cir. 1999) ("*AACS*").  Unsurprisingly, Plaintiffs object to the invocation of this case, pointing out that it is not binding and pointing to its dissenting opinion, which argues that the majority "interpret[ed] § 1082(a)(2) in a manner not contemplated by Congress and not consistent with Congressional intent."  (Pl. Opp. 16-17 (citing *AACS,* 170 F.3d at 1256 (Reinhardt, J. dissenting))).  Having reviewed the case and the statute at issue, the Court finds the majority's analysis of the statute to reflect more accurately the statutory scheme.

While § 1082(a) does not explicitly prohibit declaratory relief, it does prohibit claims for injunctive relief "and other similar processes." Applying the rule against surplusage, the term "similar processes" must have some distinct meaning. *See Williams* v. *Taylor*, 529 U.S. 362, 364 (2000) (holding that the rule against surplusage is the "cardinal principle of statutory construction"). Based on a straightforward reading of the text, the Court concludes that Congress provided a catch-all provision to foreclose the possibility that a claim that would produce the same effect as an injunction could escape the limitation.

Having construed § 1082(a) in this manner, the Court must then consider whether Plaintiffs' request for a declaratory relief is in fact a disguised request for injunctive relief. As a means of differentiating between permissible and impermissible requests for declaratory relief, DOE proffers the distinction between requests that are coercive as to future events and requests that seek to resolve disputes as to past events. (Def. Br. 12-13). The Court agrees that this is a straightforward way to understand the distinction, but it recognizes, as DOE acknowledges, that certain decisions have allowed declaratory relief in forward-looking cases. (*See id.* at 13-16 ("In certain circumstances, courts have found a claim for declaratory judgment to fall outside the injunctive exclusion of section 1082(a)(2) even though such relief would have prospective effect." (collecting cases))). DOE suggests that these outlier decisions concern cases where the relief limited discrete mechanisms of behavior, as opposed to providing a complete bar to agency action. (*Id.*). In so doing, DOE has

proffered a two-part test, in which courts are to prohibit a declaratory judgment (i) that would "provide anticipatory relief" and (ii) that would be effective against "all future collection activity on their loans by the Department." (*Id.* at 13).

Plaintiffs object and point to a series of cases allowing declaratory judgment requests to proceed; they argue that DOE's test is a self-contradictory jumble of stray language from various opinions. With regards to anticipatory relief, Plaintiffs argue that DOE has overread decisions that allowed declaratory relief but contained language that might be seen as limiting. In this category, the parties dispute how to interpret *Bank of America NT & SA* v. *Riley*, 940 F. Supp. 348 (D.D.C. 1996), which allowed a suit against DOE for declaratory relief to proceed, but stated in making its determination "that the requested relief was not 'anticipatory' in nature." *Id.* at 351. Plaintiffs state that this decision disproves Defendant's argument that claims that are anticipatory in nature are foreclosed. (*See* Pl. Opp. 13-17). Plaintiffs levy the same charge regarding DOE's citations to declaratory judgment decisions that have allowed forward-looking relief. (*See id.* at 18 (arguing the "courts have repeatedly issued declarations regarding the underlying validity of borrowers' obligations on their loans — which are not limited to a particular method of collection")).

Relatedly, Plaintiffs dispute DOE's interpretation of *Thomas* v. *Bennett*, 856 F.2d 1165, 1169 (8th Cir. 1988), which DOE cites to distinguish challenges to mechanisms of collection from attempts to bar collection all

together.  (Pl. Opp. 17-18).  And it is here that Plaintiffs' arguments have more traction.  Plaintiffs correctly note that merely because the Eighth Circuit Court of Appeals allowed jurisdiction over a declaratory judgment action attacking a mechanism of collection does not demonstrate that an action that totally foreclosed collection would be prohibited.  (*See id.*).

To review, the Court agrees with Plaintiffs that DOE may have overread certain cases in formulating an appropriate mechanism for distinguishing types of relief.  That said, the Court agrees with DOE's more fundamental argument — that Plaintiffs indisputably are asking the Court to issue an order that would have the practical effect of forcing the Secretary to take certain actions, i.e., an order seeking injunctive relief.  Indeed, as Defendant observes, Plaintiffs' briefing acknowledges this fact: "Plaintiffs confirm that they are seeking impermissibly forward-looking relief when they state that 'this action seeks an advance adjudication of precisely such a collection proceeding[.]'" (Def. Reply 5 (quoting Pl. Opp. 19)).

The Court also agrees that the vast majority of the declaratory judgment cases to which Plaintiffs point involved review of final agency action under the APA.  (Def. Reply 2-4).  This is a distinction with a difference:  Reviewing a final agency action is a common function of courts, whereas if every SBI borrower succeeded in gaining the relief Plaintiffs seek here, the Court would essentially be establishing an "express lane" for the resolution of borrower defense applications, a task for which courts are not especially well-suited.  *See generally Calise Beauty Sch., Inc.* v. *Riley*, 941 F. Supp. 425, 430 (S.D.N.Y.

1996) ("Plaintiffs have not been left procedurally helpless by the preclusion of injunctive relief. In addition to pursuing administrative appeals, they may litigate final decisions by the Secretary under the Administrative Procedures Act ('APA'), pursuant to which they may be entitled to declaratory relief."). The Court considers Plaintiffs' suit to be just the type of action that Congress sought to foreclose by including the HEA's limitation on injunctive relief.

In this Opinion, the Court need not, and does not, define with precision when a court must construe a request for declaratory relief as an impermissible request for injunctive relief. While DOE's briefing admirably attempts to give structure to an unsettled area of law, given the myriad factual differences in cases (and in existing court decisions), the Court hesitates to articulate such a test. As it happens, it does not need to. However the test for injunctive relief is ultimately defined, it encompasses these facts, where Plaintiffs have asked the Court to predetermine the outcome of an ongoing review by a Government agency, and in so doing foreclose any future enforcement actions by the Government agency against Plaintiffs.

As the Ninth Circuit observed in *AACS*:

> [I]t seems obvious that the anti-injunction bar cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for "declaratory relief." Yet this is precisely what [Plaintiffs'] complaint does when it asks for [a decision mandating that Plaintiffs' debts] be declared null and void.

170 F.3d at 1254. This Court lacks subject matter jurisdiction over Plaintiffs' claims against Defendant. It therefore dismisses that portion of the case under Rule 12(b)(1), but stresses that such dismissal will not, on its own, bar

Plaintiffs (or other student borrowers) from raising a similar challenge to a final DOE decision under the APA.

**B.      Plaintiffs Fail to State a Claim on Which Relief Can Be Granted**

Because the Court lacks subject matter jurisdiction to consider Plaintiffs' claims against the Secretary, it arguably should not consider the merits of these claims.  *See Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions"). However, the jurisdictional issues raised by Defendant are complex, and to a certain extent, the Court is breaking new ground.  To promote efficiency for the parties — particularly for Plaintiffs, who have been waiting years for resolution of their claims — the Court will address certain of Defendant's merits arguments.

**1.      Applicable Law**

**a.      Motions to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiffs favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### b. The Declaratory Judgment Act

The Declaratory Judgment Act provides, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act provides courts a "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton* v. *Seven Falls Co.,* 515 U.S. 277, 286 (1995). "But that discretion does not extend to the declaration of rights that do not exist under law.... The [Declaratory Judgment Act] is procedural only, and does not create an independent cause of action." *Chevron Corp.* v. *Naranjo,* 667 F.3d 232, 244 (2d Cir. 2012) (internal quotation marks and citations omitted). The viability of claims brought under the Declaratory Judgment Act is also limited by the requirement of an "actual controversy", which necessitates an examination of the claims' ripeness. *See Ray Legal Consulting Grp.* v. *Gray,* 37 F. Supp. 3d 689, 699-700 (S.D.N.Y. 2014) (explaining that the Declaratory Judgment Act (i) does not create an independent cause of action and (ii) "incorporate[s] the ripeness requirements of Article III").

### 2. Analysis

Defendant argues that the loans themselves do not create federal rights that can be affirmatively enforced. (Def. Br. 17). Ms. Carr's loan provides the following statement: "In some cases, you may assert, as a defense against collection or your loan, that the school did something wrong or failed to do

something that it should have done." (Byars Decl., Ex. A (Carr's Direct Loan Master Promissory Note (redacted)) at 7). Ms. Colon's loans contains similar language, but with additional language limiting the borrower's ability to bring claims against anyone beyond the lender holding the loan. (*See* Ranucci Decl., Ex. A). Neither loan document contains contractual language providing for, or even suggesting, the ability to bring affirmative claims for relief. For its Rule 12(b)(6) argument, DOE contends that because (i) the plain language of the contracts contains no right of action and (ii) Plaintiffs have identified no statutory right of action, the "procedural" nature of the Declaratory Judgment Act cannot give rise to a claim for relief. *See Chevron Corp.*, 667 F.3d at 244. In addition, DOE points to guidance from the Office of Post-Secondary Education that the regulation creating a borrower defense "does not provide a private right of action for a borrower and is not intended to create new Federal rights in this area." Notice of Interpretation, 60 Fed. Reg. 37,768, 37,769 (July 21, 1995).

Plaintiffs respond that they are seeking the textbook form of relief under the Declaratory Judgment Act, an adjudication of contractual defenses. (Pl. Opp. 1). What is more, Plaintiffs state that while the Act may not provide an independent cause of action for student borrowers, the cause of action at issue here is *DOE's*, as the Secretary can bring a claim against Plaintiffs at any time. *See City of Rome, N.Y.* v. *Verizon Commc'ns, Inc.*, 362 F.3d 168, 174 n.3 (2d Cir. 2004) (stating that one purpose of the Declaratory Judgment Acts "is to 'release potential defendants from the Damoclean threat of impending litigation which a

harassing adversary might brandish, while initiating suit at his leisure — or never'"). While the Court agrees that relief from impending litigation is a core purpose of the Declaratory Judgment Act, it cannot agree that this accurately describes Plaintiffs' situations.

The Court agrees with DOE that, standing alone, the Declaratory Judgment Act cannot support a claim for relief. Plaintiffs provide two primary arguments in response. One can be disposed of quickly: Plaintiffs cite to a letter from former Secretary of Education Arne Duncan, in which he suggested "a borrower who is not in default … can … assert a claim that the loan is not legally enforceable on the basis of a claim against the school." (Pl. Opp. 20 (citing Ranucci Decl., Ex. E (Letter from Arne Duncan, Secretary, U.S. Dep't of Educ., to Sen. Elizabeth Warren) at 5)). However, as the DOE points out, Plaintiffs have, if not outright mischaracterized this language, certainly shaded it. (Def. Reply 8). The very next line of the letter states: "To do so, the borrower should present the claim to the servicer handling the Direct Loan for the Department." (Ranucci Decl., Ex. E at 5). Secretary Duncan plainly did not suggest that the Department had opened itself up to a private right of action for litigation that would force such a determination. The Court does not consider the Department's regulations to create a private right of action.

Plaintiffs also cite to the threat of impending collection proceedings. (Pl. Opp. 18). DOE notes that this confuses the requirement of ripeness in Declaratory Judgment Actions with the requirement of an independent right of action. (Def. Reply 6). Putting that to the side, DOE notes, correctly, that the

Government is not seeking a litigation advantage through delay, and has actually provided protections to Plaintiffs as it considers their relief applications. While Plaintiffs analogize their outstanding debts to the Sword of Damocles, which DOE has left precariously dangling over them, Ms. Carr's loans are in "stopped collection" status, and Ms. Colon's are in forbearance. (Am. Compl. ¶¶ 185, 188). Furthermore, the Department has made clear that anyone who has applied for a borrower defense will not be required to pay more than one year's worth of interest payments. (Def. Reply 7). Plaintiffs here filed their initial complaint on September 20, 2017 (Dkt. #2), more than two years after filing applications for relief with DOE. (Am. Compl. ¶¶ 183, 185). Therefore, their loans had already reached the interest cap prior to the commencement of the litigation, undercutting any argument that the Department's delay will create additional harm to Plaintiffs.

This Court has previously noted that for a Declaratory Judgment Act case to be ripe under Article III, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 700. Here, it does not appear that any of these elements has been met. Because the applications remain pending, it is not clear that there is an actual controversy or adverse legal interest between the parties. The Department has given no indication that the ultimate outcome of its review will not provide Plaintiffs the entire relief sought; far from "immediacy and reality," the legal

threat at issue remains entirely hypothetical. Returning to the metaphor that Plaintiffs borrow from *City of Rome*, the Department has sheathed the Sword and put it into deep storage.

Ms. Colon's claims suffer an additional defect, in that she has not adequately pleaded that DOE holds any of her loans. Both sides acknowledge that the language of the loan provides defenses only against the lender holding the note. (*See* Ranucci Decl., Ex. A ("any lender holding such loan is subject to all claims and defenses that I could assert against the school")). Both sides also acknowledge that DOE does not presently hold Ms. Colon's loans. (Am. Compl. ¶ 22). Plaintiffs attempt to argue around this point by citing the integral role DOE plays in controlling the FFEL program; DOE's status as the insurer and collector of FFEL's when borrowers default; and potential undiscovered contracts between DOE and the lenders. (*See* Pl. Opp. 20-22). These ruminations do not suffice to state a claim. The mere fact that the Department is closely involved in the program and might one day hold Ms. Colon's loan does not today give Ms. Colon a claim against the Department. The Declaratory Judgment Act requires immediacy and reality, and not speculation about future events.

In sum, both the absence of a right of action and a failure to plead adequately the threat of impending litigation require dismissal of Plaintiffs' claims against the Secretary for failure to state a claim.

## C. The Court Declines to Reach the Issue of Exhaustion

DOE asks the Court to impose a judicial exhaustion requirement in the event that it declines to find sovereign immunity and determines that Plaintiffs have adequately stated a claim for a relief. (Def. Br. 19-21). Given the Court's disposition of this motion, as well as the unsettled state of the law, an exhaustion inquiry would be inappropriate. *See McCarthy* v. *Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

## CONCLUSION

For the reasons above, Defendant Elizabeth DeVos's motion to dismiss is GRANTED. Plaintiffs claims against the Secretary are dismissed, and the Clerk of Court is directed to terminate her as a Defendant in this case. As this dismisses the sole count of Plaintiff Carr, the Clerk of Court is directed to terminate her from the case as well. Count Three was stayed in favor of arbitration by stipulation between the parties. (Dkt. #79). Plaintiff Colon and the remaining Defendants are hereby ORDERED to provide a joint letter to the Court on or before **March 22, 2019**, stating how they intend to proceed regarding Count Two of the Amended Complaint.

The Clerk of Court is directed to terminate the motion at docket entry 59.

SO ORDERED.

Dated: February 25, 2019
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge